**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/17/98
THOMAS K. KAHN
CLERK

No. 97-8213

D. C. Docket No. 1:90-CR-6-4-JOF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALAIN OROZCO,
a.k.a. Allan Jene Velasquez,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(November 17, 1998)**

Before BIRCH, Circuit Judge, and HILL and KRAVITCH, Senior Circuit
Judges.

BIRCH, Circuit Judge:

This case presents the issue of whether a district judge has jurisdiction under Federal Rule of Criminal Procedure 35(b) to grant a motion for reduction of sentence, when information provided by a defendant is useful in convicting a coconspirator, but the assistance occurs more than one year after imposition of sentence and the information was  known by the defendant prior to sentencing.  The district judge determined that he was without jurisdiction to rule on this motion outside of the prescribed time period.  We affirm.

## I. BACKGROUND

In December, 1989, defendant-appellant, Alain Orozco, was arrested for transporting cocaine from South Florida to Atlanta, Georgia.  On July 9, 1990, he pled guilty in the  Northern District of Georgia to conspiring to manufacture, distribute and possess cocaine base and  cocaine hydrochloride in violation of 21 U.S.C. § 846 and making  a false statement to the Federal Bureau of Investigation to conceal his identity in violation of 18 U.S.C. § 1001. In an effort to have the government file a U.S.S.G. § 5K1.1 departure motion at sentencing, Orozco informed the government

of his knowledge of the cocaine  distribution operation in which he was involved.  In addition to other information regarding the cocaine distribution conspiracy, Orozco identified Armando Rodriguez, a major cocaine distributor for whom he provided cocaine transportation services, and related details concerning their transactions.  The government, however, concluded that Orozco was not entirely truthful and had minimized some information about the cocaine distribution operation.  Additionally, the information that he supplied could not be used by the government against Orozco's four codefendants charged in the indictment or others that he named because of venue problems or lack of corroborating evidence.

Concluding that the information provided by Orozco prior to his sentencing was insufficient to qualify as substantial assistance, the government did not move for a reduction in his sentence under section 5K1.1.  On November 16, 1990, Orozco was sentenced to 151 months of imprisonment for his role in the cocaine distribution

conspiracy.  This court affirmed his sentence.  See United States v. Orozco, 964 F.2d 1146 (11th Cir. 1992) (mem.).

Within a year of Orozco's sentencing, the government filed a preliminary motion under Rule 35(b) that advised the district judge that Orozco's cooperation had not been completed.  The government requested the district judge not to rule on the motion until it was supplemented or withdrawn.  When Orozco furnished no additional information, the government withdrew its preliminary Rule 35(b) motion.[1]

---

[1] In her special concurrence, Judge Kravitch states "that the record is void of any information" to support the reason that the government withdrew its preliminary Rule 35(b) motion as being because Orozco provided no further cooperation.  United States v. Orozco, ___ F.3d ___, ___ n.3 (11th Cir. 1998) (Kravitch, J., concurring specially) (emphasis added). To the contrary, the record provides sufficient support for this statement. Within the time from his arrest on December 20, 1989, see R1-7(A), until November,  1990, Orozco provided information regarding the extensive cocaine distribution conspiracy in which he had been involved to the government through various debriefings, see R1-107-1.  At a debriefing on June 5, 1990, he identified Rodriguez  as a cocaine supplier, the information about which this case is concerned. See R5-10. The information regarding Rodriguez, however, was not useful to the government at that time because Rodriguez was a fugitive.  See id. at 7 (AUSA's explanation to the district judge at the hearing on the Rule 35 motion that information that is not usable does not qualify for substantial assistance). Orozco's plea agreement required him to cooperate fully with the government and to give "truthful testimony," R1-82(D)-1 ¶ 2(c), to obtain a downward departure at his sentencing under U.S.S.G. § 5K1.1, see id. at 2 ¶ 2(d). Thus, the information that Orozco provided to the government prior to his sentencing was with the hope of acquiring a § 5K1.1 motion for reduction in his sentence.

Orozco's attorney conceded, however, in a motion for downward  departure filed on November 15, 1990, the day before Orozco's sentencing, that Orozco had minimized the amount of cocaine that he had transported, "refused until November 9, 1990 to

4

admit he had other sources for cocaine than those originally named," R1-107-1, and "denied his family's role in illegal drug trafficking," id. Consequently, Orozco's "reluctance to be totally candid prevented the government from recommending that he be given credit for substantial assistance and led to his failure to be given credit for acceptance of responsibility." Id. at 2 (emphasis added). Thus, the AUSA did not make a § 5K1.1 motion at Orozco's sentencing on November 16, 1990.

Within a year of Orozco's sentencing, the AUSA in the Northern District of Georgia filed on November 14, 1991, the subject preliminary Rule 35(b) motion that states that Orozco's cooperation "is not complete at this time," R1-131(A)-2 ¶ 4, and that "Mr. Orozco has represented that he has information which may be of importance to the Federal Bureau of Investigation or other agencies," id. at 1 ¶ 1. Thus, the purpose of the government's filing the preliminary Rule 35(b) motion was "to preserve the jurisdiction of this Court to lower the sentences imposed and allow the defendant sufficient time to provide assistance which the United States may evaluate to determine whether such assistance is substantial" so that the government could file a Rule 35(b) motion for reduction in sentence should Orozco's cooperation be forthcoming and qualify as substantial assistance.  Id. at 2 ¶ 3 (emphasis added). The preliminary motion was prospective, filed in anticipation of additional information from Orozco and before such purported assistance had been received or evaluated. Additionally, on November 13, 1991, the government filed Rule 35 motions for reduction in sentences for two of Orozco's codefendants, Miriam Ledesma and Haran Griffin, because of their substantial assistance to the government.  See R1-129, 130.

On January 8, 1992, the district judge noticed a hearing on  February 7, 1992, for the Rule 35 motions for Orozco, Ledesma, and Griffin.  See R1-131(B).  On February 4, 1992, the AUSA moved for a continuance of this hearing and stated the cooperation status of Orozco, Ledesma and Griffin.  See R1-131(C).  Therein, the AUSA explains that the government filed the preliminary Rule 35 motions "as the procedural device whereby the Court may consider a reduction of the previously imposed sentences after more than one year has passed from the date of sentencing."  Id. at 1 ¶ 1. The AUSA then states the status of cooperation for each defendant. With respect to Orozco, the AUSA states that "[a]s of the filing of this continuance, Orozco has furnished no further cooperation, but will be a witness in an investigation which has not been identified."  Id. at 1-2 ¶ 3 (emphasis added). On March 31, 1992, the district judge, "having . . . read and considered" the government's motion for continuance wherein with respect to Orozco, the AUSA stated that Orozco had provided no further information since the filing of the government's preliminary Rule 35(b) motion, canceled the previously scheduled hearing on Orozco's Rule 35 motion and acknowledged that the government had withdrawn this motion.  R1-134.  Judge Kravitch postulates that Orozco could have been a witness in a government investigation that was unidentified on February 4, 1992, but was conducted in less than eight weeks and declared unfruitful prior to March 31, 1992, when the government's withdrawal of its preliminary Rule 35(b) motion became effective.  Orozco, ___ F.3d at ___ n.3 (Kravitch, J., concurring specially).  While, after approximately a year of government debriefings of Orozco, an unidentified investigation

5

In 1996, the United States Attorney for the Northern District of Florida learned that Orozco had information that could assist the government in its prosecution of Rodriguez, who had been indicted for distributing cocaine after being a fugitive for five years before

referenced in the government's motion for continuance filed on February 4, 1992, more probably refers to a future prosecution of an unobtainable coconspirator, such as Rodriguez, who was a fugitive, we need not speculate at all.

The government's brief states that "[Orozco] had furnished no other cooperation since the preliminary Rule 35 motion had been filed" and cites the government's motion for continuance which states that Orozco had provided no further assistance since the filing of the preliminary Rule 35(b) motion. Appellee's Brief at 4. Furthermore, the AUSA who signed the government's appellate brief as an officer of the court is the same AUSA and member of the Southeastern Drug Task Force who signed the original indictment, R1-7-4, the superceding indictment, id. 58-4, the plea agreement, id. 82(D)-4, the preliminary Rule 35(b) motion, id. 131(A)-3, and the Rule 35(b) motion pertaining to Orozco's assistance at the trial of Armando Rodriguez, filed on December 17, 1996 , id. 152-3. In short, this AUSA has handled Orozco's case from investigation through this appeal and obviously knew what information Orozco provided and when he provided it. By signing the government's brief, the AUSA certified that the statements therein were supported by his knowledge and information. See United States v. Stevens, 510 F.2d 1101, 1106 n.5 (5th Cir. 1975) (recognizing that, aside from sworn affidavits, a government attorney who signs a document filed with a court is "acting as an officer of the court" and is "bound by the requirements of Rule 11, Federal Rules of Civil Procedure."). Thus, there is no nothing in the record whatsoever to indicate that Orozco provided further assistance to the government from the  time that the AUSA filed the preliminary Rule 35(b) motion on November 14, 1991, until that motion was withdrawn by the government effective March 31, 1992. Moreover, Orozco has not contradicted the government's factual relation of his cooperation by representing otherwise.

his arrest.[2]  At Rodriguez's trial in May, 1996, over four years after

Orozco's sentence became final, Orozco testified that Rodriguez

supplied him with five kilograms of cocaine, which he brought to

Atlanta.  Additionally, he corroborated the testimonies of earlier

government witnesses.  Orozco's testimony was the same

evidence that he had provided in 1990 to Federal Bureau of

Investigation and Drug Enforcement Administration agents.

Because of his assistance, the Florida Assistant United States

Attorney recommended to the Georgia Assistant United States

Attorney ("AUSA") that a Rule 35(b) motion be filed for Orozco.  In

the government's motion for reduction of sentence, filed on

December 17, 1996,  in the Northern District of Georgia, the AUSA

explained that the information upon which the motion was based

was known to Orozco at his sentencing but that the government

had no interest in the information until more than one year after

---

[2] Rodriguez negotiated a guilty plea that he subsequently withdrew and proceeded to trial; he was convicted.

Orozco had been sentenced.[3]  In the motion, the AUSA  advised that "Orozco appeared and testified with the understanding that no guarantee was made as to any sentence reduction" and that, "because this motion is made more than one year after imposition of sentence," the district judge must determine whether he "has jurisdiction to consider this motion and grant any reduction of the previously imposed sentence."  R1-152-2.

The same district judge in the Northern District of Georgia who had sentenced Orozco conducted a hearing on the government's Rule 35(b) motion on January 30, 1997.  The AUSA informed the district judge that, when he was prosecuted and debriefed in 1990, Orozco had related information concerning Rodriguez.  Because Rodriguez could not be located,  Orozco's  information could not be used to prosecute him at that time. Thus, the government did not file a motion to reduce Orozco's sentence for substantial assistance.

---

[3] Pursuant to Rule 35(b), the Georgia AUSA asked the district judge to reduce Orozco's sentence from 151 to 115 months. See R1-152-3.

In response to the district judge's inquiry about the terms of Orozco's plea agreement, the AUSA advised that the agreement did not require that the government file a Rule 35(b) motion but stated that the government would inform the district judge and file a section 5K1.1 motion if Orozco provided substantial assistance prior to his sentencing. Absent his being able to order the government to file a Rule 35(b) motion pursuant to the terms of the plea agreement, the district judge concluded that he was without jurisdiction under the rule to consider a Rule 35(b) motion for substantial assistance at that time.[4] Orozco appeals this ruling.

## II. DISCUSSION

In this appeal, we must decide whether the district judge correctly determined that he did not have jurisdiction to consider a Rule 35(b) motion for reduction of sentence, when Orozco provided information known to him prior to his sentencing but that

_____

[4] Concerning his jurisdiction to rule on the government's Rule 35(b) motion, the district judge decided that he lacked jurisdiction: "And I'm going to rule that I lack jurisdiction based on the fact that [Orozco] gave the information, the government did not in the one-year period of time consider it to be substantial[]. It only became substantial when it became practically useful." R5-15. Nevertheless, the district judge commented that "[t]he case cries out for relief. If it were discretionary, I would do something. I understand it is jurisdictional." Id. at 12.

9

information was not useful in prosecuting Rodriguez until over a year after imposition of Orozco's sentence.  We review a district judge's statutory interpretation and application de novo.  See United States v. Grigsby, 111 F.3d 806, 816 (11th Cir. 1997).  When a statute has been duly enacted and the language is plain, "'the sole function of the courts is to enforce it according to its terms.'"  Central Trust Co. v. Official Creditors' Comm. of Geiger Enters., Inc., 454 U.S. 355, 359-60, 102 S.Ct. 695, 698 (1982)  (per curiam) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194 (1917)).  "Review of the legislative history is not necessary unless a statute is inescapably ambiguous."  Solis-Ramirez v. United States Dept. of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam); see United States v. Rush, 874 F.2d 1513, 1514 (11th Cir. 1989) (recognizing that legislative history is not used to create ambiguity where statutory language is clear).

Federal Rule of Criminal Procedure 35(b) provides:

REDUCTION OF SENTENCE FOR CHANGED CIRCUMSTANCES.  The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a

defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.  The court may consider a government motion to reduce a sentence made one year or more after imposition of the sentence <u>where the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence.</u>  The court's authority to reduce a sentence under this subsection includes the authority to reduce such  sentence  to a level below that established by statute as a minimum  sentence.

18 U.S.C. app. Fed. R. Crim. P. 35(b) (1994) (emphasis added).

Our court previously has held that the time period stated within the rule for the government to file a Rule 35(b) motion is jurisdictional. <u>See</u> <u>In re United States</u>, 898 F.2d 1485, 1486 (11th  Cir. 1990) (per curiam) (citing <u>United States v. Addonizio</u>, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242-43 (1979)); <u>United States v. Rice</u>, 671 F.2d 455, 459 (11th Cir. 1982).[5]  We also have determined that "sentence is

---

[5] We acknowledge that these cases were decided under prior versions of Rule 35(b) and that they state different time periods for the government's filing a Rule 35(b) motion after imposition of sentence.  Nevertheless, we apply our precedential rationale regarding the jurisdictional nature of this operative time period to the current version of Rule 35(b).  <u>See</u> <u>United States v. Lopez</u>, 26 F.3d 512, 522 (5th Cir. 1994) (stating that the seven days from imposition of sentence within which the district court can correct technical errors is "jurisdictional" under Federal Rule of Criminal Procedure 35(c), which was added to Rule 35 with the 1991 amendment that also revised Rule 35(b), which we

imposed for the purposes of Rule 35(b) when the sentencing order

constitutes a final, appealable order," which signifies the

commencement of the running of the specified time period.  In re

United States, 898 F.2d at 1487.  Additionally, we have clarified the

"temporal framework" involved with the government's

acknowledging a convicted defendant's substantial assistance prior

to sentencing in a section 5K1.1 motion at sentencing and the

government's rewarding a convicted defendant's substantial

assistance to the government after sentencing with a Rule 35(b)

motion.[6]  See United States v Alvarez, 115 F.3d 839, 842 (11th Cir.

1997); United States v. Howard, 902 F.2d 894, 896 (11th Cir.

1990).

　　Prior to the current version of Rule 35(b), the time period

within which a Rule 35(b) motion requesting a sentence reduction

for post-sentencing assistance could be filed was limited to the

---

review in this case).

　　[6] Rule 35(b) "provides the only avenue for reduction of a legally imposed federal prison sentence," United States v. Gangi,  45 F.3d 28, 30 (2d Cir. 1995), while 28 U.S.C. § 2255 and Federal  Rule of Criminal Procedure 35(a) permit a district court to correct an illegal sentence at any time.

specified time period stated in Rule 35(b) from the date on which the convicted defendant's sentence became final.[7] The current version, resulting from the 1991 amendment to Rule 35, restricts the time period within which the government may file a Rule 35(b) motion to "one year after the imposition of the sentence" and further extends the time period within which the government may file a Rule 35(b) motion to "one year or more after imposition of the sentence" through the qualification or exception when the convicted defendant provides substantial assistance, consisting of "information or evidence" unknown "by the defendant until one year or more after imposition of sentence." 18 U.S.C. app. Fed. R. Crim. P. 35(b) (1994). Our sole inquiry in this appeal is to decide whether the district court had jurisdiction to rule on the government's Rule 35(b) motion to reduce Orozco's sentence following his assistance in the prosecution of Rodriguez in 1996.

---

[7] The time period within which the government may file a Rule 35(b) motion from the date that a sentence is final has been expanded by amendments. See 18 U.S.C. app. Fed. R. Crim. P. 35 (1964) (60 days); 18 U.S.C. app. Fed. R. Crim. P. 35 (1970) (120 days); 18 U.S.C. app. Fed. R. Crim. P. (1994) (one year).

Because Orozco's assistance in the prosecution of Rodriguez and the consequent filing of the Rule 35(b) motion in 1996 were outside of the one-year limitation after the imposition of his sentence, he argues the applicability of the exception in Rule 35(b). He represents that the rule allows a motion for reduction of sentence to be filed after the one-year period when a convicted defendant's assistance does not become useful to the government until a year or more after sentence imposition.  Thus, he argues that the information  regarding Rodriguez that he provided to the government in 1990 should make him eligible for a reduction in his sentence under Rule 35(b) as of the time in 1996 that it became useful to the government  to convict Rodriguez.

In addressing the current version of Rule 35(b), as amended in 1991, the Fourth and Seventh Circuits have interpreted the rule literally.  See United States v. Carey, 120 F.3d 509 (4th Cir. 1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1062 (1998);  United States v. McDowell, 117 F.3d 974 (7th Cir. 1997).  In Carey, the Fourth Circuit recognized the policy considerations involved in the one-

year limitation on the government's filing a Rule 35(b) motion: "ending the sentence negotiation process," "finalizing the length of a defendant's sentence," providing convicted defendants with incentive promptly to disclose all of their knowledge concerning unlawful conduct "regardless of whether they appreciate its value to the government," and preventing sentence manipulation whereby convicted defendants could return to the government years after sentencing with outdated or fabricated information regarding criminal activity. Carey, 120 F.3d at 511, 512. Applicable to this case, that court determined that "if substantial assistance forming the basis of a downward departure motion involves information or evidence that the defendant knew within the one-year period after his sentencing, he is not entitled to have the one-year limitation relaxed." Id. at 511.

The Carey court also confronted the same argument presented by Orozco that the Advisory Committee Note to Rule 35(b) relaxes the one-year limitation period to encompass the situation where a defendant's assistance was not useful until the

15

one-year period from sentence imposition had expired.[8]  See id. at

512.  In rejecting this argument, the Fourth Circuit explained:

> [T]he Advisory Committee Note is not the law; [Rule 35(b)] is. . . . [I]f the Advisory Committee Note can be read in two ways, we must read it, if we consult it at all, in a manner that makes it consistent with the language of the rule itself, and if the rule and the note conflict, the rule  must govern.  Because the rule on the issue before us is unambiguous, we need not even consult the note to determine the rule's meaning.
>
> The rule unambiguously provides that the one-year limitation may be relaxed only where the information provided by the defendant was "not known by the defendant until one year or more after the imposition of sentence."  This language does not allow for an interpretation that the one-year period may be relaxed when the information was known during the one-year period but that the cooperation could not have been provided until more than one year, for whatever reason.

---

[8] The portion of the 1991 Advisory Committee Notes to the current version of Rule 35(b) that the Carey court addressed and that Orozco argues to us states as follows:

> The [1991] amendment [to Rule 35(b)] also recognizes that there may be those cases where the defendant's assistance or cooperation may not occur until after one year has elapsed.  For example, the defendant may not have obtained information useful to the government until  after the time limit had passed.  In those instances the  trial court in its discretion may consider what would otherwise be an untimely motion if the government establishes that the cooperation could not have been furnished within the one-year time limit.  In deciding whether to consider an untimely motion, the court may, for example, consider whether the assistance was provided as early as possible.

18 U.S.C. app. Fed. R. Crim. P. 35(b) (1994)(Advisory Comm. Notes for 1991 Amend.).

Id. at 512-13 (citation omitted).[9]  See Fed. R. Crim. P. 45(b) ("[T]he court may not extend the time for taking any action under Rule[] . . . 35, except to the extent and under the conditions stated in [it].").

In McDowell, the Seventh Circuit recognized that the one-year jurisdictional provision for a Rule 35(b) motion is distinct from other jurisdictional deadlines because it is "qualified by the exception for 'information or evidence not known by the defendant until one year or more after imposition of sentence.'"  McDowell, 117 F.3d at 979 (quoting Fed. R. Crim. P. 35(b)).  Since the government's filing Rule 35(b) motions within a year of sentencing is "a constraint upon the court's authority to grant such motions," cases in which this exception is invoked requires a district judge "to conduct an inquiry,

---

[9] We note that the First Circuit stands alone in using the 1991 Advisory Committee notes to render a broad interpretation of "'not known'" with reference to a defendant's knowledge a year or more after sentence imposition, as stated in the current version of Rule 35(b). United States v. Morales, 52 F.3d 7, 8 (1st Cir. 1995) (quoting Fed. R. Crim. P. 35(b)).  Eschewing a literal interpretation of Rule 35(b), that court held that a defendant cannot be said to "'know'" information useful to the government "until becoming aware of its value, or being specifically asked,"  although the defendant in that case did not acquire the information until a year or more after her sentencing.  Id.  In addition to our disagreement with the First Circuit's expansive interpretation of Rule 35(b), we note that the Morales defendant did not substantially cooperate with the government pursuant to a supplemental plea agreement until several years after her sentencing, whereas Orozco  reiterated at Rodriguez's trial in 1996 information that he had given the government in 1990.

beyond a perusal of the docket sheet" to determine if he has "authority to grant a Rule 35(b) motion." Id. For the exception to the jurisdictional, one-year rule to become effective for the government's filing a Rule 35(b) motion, the Seventh Circuit concluded that the district judge must be convinced that the convicted defendant acquired information or evidence not known until a year or more after sentencing. That court reasoned that "[b]ecause only the government now may file Rule 35(b) motions, an interpretation of the Rule that permitted the government to 'waive' the time limit would render the deadline ineffectual." McDowell, 117 F.3d at 979.

While Orozco is ineligible jurisdictionally from application of the one-year limitation period from sentence imposition in Rule 35(b), we conclude that he also is ineligible factually under the plain terms of the exception to the rule. It is undisputed that Orozco did not provide information or evidence in the prosecution of Rodriguez that was unknown to him during the one-year time limitation following the imposition of his sentence. He reiterated at

18

Rodriguez's trial in 1996 the same information that he had given the government in 1990 before his sentencing.  The current version of Rule 35(b) concerning assistance provided by a convicted defendant more than a year after imposition of his sentence focuses on the character of the information provided by the defendant, new disclosures, and not the usefulness of that information to the government.   See United States v. Mitchell, 964 F.2d 454, 461 (5th Cir. 1992) (per curiam) (recognizing that, in the usual case, "no information or evidence comes to light more than one year after imposition of sentence").  With the hope of reducing their sentences, convicted defendants provide a variety of information to the government.[10]  Determining whether a motion for reduction of sentence will be filed is reserved to the government, which must ascertain what information the defendant has as well as

---

[10] "[T]he substantial assistance business is inherently risky.  When a defendant first decides to cooperate there is no guarantee that the government will ultimately deem his assistance 'substantial.'" United States v. White, 71 F.3d 920, 927 (D.C. Cir. 1995).  See United States v. Francois, 889 F.2d 1341, 1345 (4th Cir. 1989) (noting that the government's decision not to file a substantial assistance motion under either section 5K1.1 or Rule 35(b) "does not deprive the defendant of any constitutional rights . . . because there is no constitutional right to availability of a substantial assistance provision to reduce a criminal sentence.").

the truthfulness and usefulness of this information before deciding whether it is appropriate to file a section 5K1.1 motion at sentencing or a Rule 35(b) motion for a convicted defendant thereafter.  See Wade v. United States, 504 U.S. 181, 185, 112 S.Ct. 1840, 1843 (1992) (acknowledging  "that  in both [18 U.S.C.] § 3553(e) and § 5K1.1 the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted"); United States v. Forney, 9 F.3d 1492, 1501 (11th Cir. 1993) (noting that "courts are precluded from intruding into prosecutorial discretion" regarding substantial assistance motions). "The substantial assistance regime is not a spoils system designed simply to reward a cooperative defendant; it is designed to benefit the government in its prosecution efforts." United States v. White, 71 F.3d 920, 924 (D.C. Cir. 1995). Provided that a Rule 35(b) motion is filed within the jurisdictional time period, within a year of sentence imposition for information known to a convicted defendant during that time and more than a year after sentence imposition for new information unknown to the

convicted defendant within a year of sentence imposition, the district judge has discretion to rule on the motion based upon the government's recommendation. See United States v. Griffin, 17 F.3d 269, 270 (8th Cir. 1994) ("The decision to grant or deny a Rule 35(b) motion is entirely within the discretion of the district court.").

There is no evidence of bad faith on the part of the government in this case.[11] That is, the government did not acquire Orozco's information concerning Rodriguez and deliberately refrain from using that information until the one-year time limitation from imposition of his sentence had passed so that the motion would be barred jurisdictionally. Instead, after receiving Orozco's information regarding Rodriguez in 1990, the AUSA in the Northern District of Georgia determined that this information in conjunction with other information that Orozco provided prior to his sentencing was not useful. Therefore, the government did not file a section 5K1.1

---

[11] We have observed "that not only is the government the best determiner of a defendant's assistance, but also that it has great incentive to perform this evaluation accurately. . . . [T]he government has no reason to refuse to make substantial assistance motions when appropriate, since it is dependant upon future defendants' cooperation." Forney, 9 F.3d at 1502 n.4.

motion and subsequently withdrew its preliminary Rule 35(b) motion when Orozco supplied no additional information within a year after imposition of his sentence. Thereafter, the prosecution of Rodriguez, who had been a fugitive for five years, commenced in the Northern District of Florida. Orozco was contacted by the government, and he testified at Rodriguez's trial. His testimony was the same information that he had imparted in the Northern District of Georgia in 1990, nothing more.[12] Since Orozco merely repeated the same information known to him when he talked with the government before his sentencing, he is not eligible for a Rule 35(b) motion under the exception for information that is not known by the convicted defendant until more than a one-year period after sentence imposition. Congress has enacted several revisions of Rule 35(b) and, thus, has shown attentiveness to changing the specific terms of this rule. We are not at liberty to add terms or

---

[12] In testifying at Rodriguez's trial, Orozco did precisely what he agreed to do in his plea agreement: "The defendant [Orozco] will voluntarily appear without subpoena or other legal process at any proceeding where his testimony is desired by the Government and will give truthful testimony." R1-82-2 at ¶ c. We additionally note that, based on his previous information given to the government, Orozco could have been subpoenaed to testify to this information at Rodriguez's trial.

posit an interpretation that differs from the explicit language of Rule 35(b), particularly when we can decide this case within the plain terms of the rule.[13] See Illinois v. Abbott & Assocs., Inc., 460 U.S. 557, 572, 103 S.Ct. 1356, 1364 (1983) (recognizing that federal courts are not authorized "to add specific language that Congress did not include in a carefully considered statute"); Carey, 120 F.3d at 512 ("Whether we agree with all of the policy considerations or whether  [Rule 35(b)] effectively addresses them, we are bound to apply the rule in the manner in which it is written.").

### III. CONCLUSION

In this appeal, Orozco contends that the district judge should have granted the government's Rule 35(b) motion and reduced his sentence based on his testimony in Rodriguez's trial over four

---

[13] Although we do not believe that the explicit terms of Rule  35(b) permit us to accord relief to Orozco, we agree with the district judge that this case demonstrates a factual situation that Congress should consider when it next contemplates revision of this rule.  That is, we hope that Congress will address the apparent unforeseen situation presented in this case where a convicted defendant provides information to the government prior to the  expiration of the jurisdictional, one-year period from sentence imposition but that information does not become useful to the government until more than a year after sentence imposition.  In making the Rule 35(b) motion, the government determined that it  was warranted but also recognized the jurisdictional impediment of Rule 35(b).

years after imposition of Orozco's sentence. Because Orozco repeated information to prosecutors in the Northern District of Florida that he previously had disclosed to prosecutors in the Northern District of Georgia before his sentencing and did not relate information acquired a year or more after his sentence imposition, the district judge concluded that he was without jurisdiction to consider the Rule 35(b) motion. For the reasons explained herein, we agree that the district judge did not have jurisdiction to consider the Rule 35(b) motion. Accordingly, we AFFIRM the ruling of the district judge.

HILL, Senior Circuit Judge, concurring:

The facts of this case illustrate the near impossibility of codifying that which ought to be left to judicial discretion. The Executive, charged with seeing to the faithful execution of the law, has concluded that Orozco ought to have the benefit of his cooperation. He had fully, and promptly, cooperated, but the government only belatedly appreciated the value of his cooperation. The Executive's opponent, Orozco, obviously feels that he should have this benefit. The district judge that heard the original case as well as this petition would grant the relief. As I take it (footnote 12), we, also, would grant it.

But the draftsman of this rule, trying to anticipate future situations, succeeded in anticipating all except the one that obtains.[1] So, Orozco,

---

[1] The product of this rule is like unto the estate planning attorney who has diligently prepared a will with so many provisos that it anticipates every conceivable situation except the one actually existing at his client's death.

25

entitled to release under the views of all interested parties, remains in penal servitude and all that we can do is suggest that the Congress, in it own good time, attempt by further codification to see that it does not happen to someone else. We ought to do better than this.

KRAVITCH, Senior Circuit Judge, concurring specially:

I agree with the majority that Rule 35(b) is drafted so narrowly that it must be read to preclude jurisdiction in this case. I write separately, however, to emphasize that this result contradicts Congress's purpose in providing for discretionary sentence reductions if the defendant immediately provides the government with information that assists the government substantially in prosecuting other criminals. Rule 35, as written, discourages minor participants in large criminal operations from divulging key information about their cohorts, knowing that the government may choose or may be forced to wait to use the information until the time limit for any possible sentence reduction has passed.

As other courts that have considered Rule 35(b) have noted, the purpose of the rule is to encourage defendants immediately to provide full disclosure about criminal operations of which they have knowledge. See

United States v. Morales, 52 F.3d 7, 8 (1st Cir. 1995) ("Manifestly, the purpose for denying value to retained knowledge is to induce immediate full disclosure."); United States v. Carey, 120 F.3d 509, 512 (4th Cir. 1997), cert. denied, ___ U.S. ___, 118 S. Ct. 1062 (1998) ("The one-year limitation also provides an incentive to defendants to come forward promptly with all that they know about illegal conduct, regardless of whether they appreciate its value to the government."). The Advisory Committee Notes to the 1991 amendment to Rule 35(b) ("the Notes") also emphasize that timely *cooperation by the defendant*, rather than timely *use of the information by the government*, is the focus of the new rule.[1] That the language of the rule itself fails to carry out this obvious and important policy manifests an urgent need for Congress to reconsider Rule 35.

---

[1] The Notes describe one of the problems with the old rule, which the 1991 amendment was intended to correct:

> [Under the old rule], the trial court was required to rule on the government's motion to reduce a defendant's sentence within one year after imposition of the sentence. This caused problems, however, in situations where the defendant's assistance could not be fully assessed in time to make a timely motion which could be ruled upon before one year had elapsed. . . . [The amendment] should benefit both the government and the defendant and will permit completion of the defendant's anticipated cooperation with the government."

18 U.S.C. app. Fed. R. Crim. P. 35(b) (Advisory Comm. Notes for 1991 Amend.).

The Notes also address the portion of the amendment that allows a district court to exercise jurisdiction over a Rule 35(b) motion made outside the one-year time limit: "In deciding whether to consider an untimely motion, the court may, for example, consider whether the assistance was provided as early as possible." Id.

The predicament in which the defendant here finds himself powerfully illustrates the gap that Congress has created in Rule 35(b). The defendant was arrested on drug charges in 1989 at the age of nineteen; he subsequently entered a guilty plea and was sentenced to 151 months in prison. Well within the one-year time period prescribed by Congress,[2] the defendant provided extensive information about the criminal operation in which he was involved, including information about Armando Rodriguez, a major cocaine distributor who was a fugitive at the time. The government initially filed a Rule 35(b) motion with respect to the defendant but requested that the district court delay its ruling on the motion. Ultimately, the government withdrew that motion.[3] It is undisputed that in 1996, when

---

[2] It is not clear from the record exactly when the defendant disclosed this information to the government. It appears, however, that the disclosure may have been made as early as the day the defendant was arrested.

[3] The majority seems to infer that the government withdrew the original Rule 35(b) motion because the defendant stopped cooperating. Although the point does not affect our holding, I note that the record is void of any information to support that conclusion, and even the government–upon whose brief the court independently relies to substantiate its characterization of the facts–does not urge such an inference. The original Rule 35(b) motion, filed within the one-year time limit, requested that the district court hold the motion until the government could "appropriately investigate the matter which the defendant will disclosed [sic]." R1-131(1), at ¶ 5. The motion stated that "[t]he cooperation which the defendant provides, in all likelihood, will involve the need for extensive investigative measures . . . and therefore, is not complete at this time." Id., ¶ 4. A few months later, the government requested that the district court again delay the hearing on the Rule 35(b) motion, stating that the defendant "ha[d] furnished no further cooperation, but [would] be a witness in an investigation which [had] not been identified." R1-131(2), at ¶ 3. Less than two months later, the government withdrew the Rule 35(b) motion without explanation. In presuming that the defendant stopped

28

Rodriguez finally had been apprehended and indicted and was being tried, the defendant voluntarily served as a government witness and testified to the same information he had provided the government several years before. In the government's judgment, this testimony assisted it substantially in the prosecution of Rodriguez, as evidenced by the government's decision to bring the motion to reduce the defendant's sentence that is at issue in this case. This court is bound by Rule 35(b), however, and thus must reject the government's attempt to carry out the purpose of the rule.

It is unfortunate that the language of this rule precludes the implementation of the very policy it was written to support. It is particularly unfortunate for the defendant here, whose case, as the district court noted, "cries out for relief."

---

cooperating, the majority ignores the plausible inference from this record that the government withdrew the Rule 35(b) motion because its investigation did not prove fruitful and it therefore was unable at that time to use the information provided by the defendant in any concrete way.