# United States Court of Appeals
## For the First Circuit

No. 07-1701

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR MULERO-ALGARÍN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Howard, Circuit Judge.

Rafael F. Castro Lang on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney (Chief, Appellate Division), and Germán A. Rieckehoff, Assistant United States Attorney, on brief for appellee.

July 24, 2008

**SELYA**, **Senior Circuit Judge**.  A criminal defendant who, after he is sentenced, elects to cooperate with the government in the prosecution of others may in certain circumstances receive a reduced sentence.  See Fed. R. Crim. P. 35(b).  Within wide limits, however, the government holds the key that can unlock the door to such leniency.  This appeal implicates the extent of the government's discretion in deciding when to withhold the use of that key.  Concluding, as we do, that the district court acted appropriately both in refusing to compel the government to file a Rule 35(b) motion and in declining to allow either discovery or an evidentiary hearing, we affirm its ruling.

The underlying case had its genesis in the interception of a boat carrying more than 1500 kilograms of cocaine off the coast of Puerto Rico.  A two-count indictment against defendant-appellant Héctor Mulero-Algarín for importation and drug-trafficking ensued.

The indictment led to discussions between the defendant and the government anent possible cooperation.  In a letter dated March 20, 2002, the government indicated that in light of three factors — the defendant's reluctance to talk about the full scope of the illicit enterprise, his minimization of his role in that

enterprise, and his unwillingness to testify against his confederates — it would not move for a safety valve reduction.[1]

The defendant was undeterred. On May 15, 2002, he pleaded guilty to a count that charged him with possessing 150 kilograms or more of cocaine with intent to distribute. See 21 U.S.C. § 841(a)(1). The plea agreement contained no commitment concerning either the safety valve or the fruits of future cooperation.

Nevertheless, following the lower court's acceptance of his changed plea the defendant submitted to several debriefings. By the time of the disposition hearing (October 24, 2002), the government had changed its tune; it moved for the safety valve reduction, vouchsafing that the defendant had "provided ample information." The district court granted the reduction and imposed a 135-month term of immurement.

Subsequent to sentencing, the defendant continued to cooperate in the hope of further leniency. To that end, he submitted to a number of additional debriefings. The last of these occurred in the summer of 2003, when he was interviewed in Miami in anticipation of giving testimony before a federal grand jury. Special Assistant United States Attorney Jared López and the case

---

[1]The safety valve is a sentencing device designed to give certain first offenders relief from mandatory minimum sentences in drug-trafficking cases. See USSG §5C1.2; see also United States v. Ortiz-Santiago, 211 F.3d 146, 150-51 (1st Cir. 2000) (explaining the operation of the safety valve provision).

-3-

agent, Ricardo Cruz, traveled to Miami for the occasion. But their journey came to naught: through no fault of the defendant's, the government's plans changed and the proposed grand jury testimony never transpired.

The defendant expected that a reduction of his sentence would be forthcoming. When none materialized, he contacted the prosecutor's office in mid-2005 (by which time López had gone elsewhere). The chief of the office's criminal division rejected his overtures. She took the position that the defendant's assistance had not been "substantial" and, thus, did not warrant the filing of a Rule 35(b) motion to his behoof.

Dismayed by this turn of events, the defendant moved to compel the government to invoke Rule 35(b). The government opposed the motion. It said, albeit conclusorily, that it had evaluated the defendant's cooperation in good faith and discerned no sufficiently compelling reason to proffer such a motion. The district court ordered the government to be more specific and to provide "facially adequate reasons" for its decision.

The government complied. It limned three grounds for its refusal to invoke Rule 35(b). First, it noted that the defendant's statements were "not sufficiently corroborated by independent admissible evidence." Second, it pointed out that certain of those statements were "contradicted by another cooperating individual." Third, it posited that the defendant had minimized his role in the

-4-

drug-trafficking enterprise. To support this final point, the government annexed to its response a copy of the March 20, 2002 letter mentioned above.

The defendant went on the offensive. He rejoined that the attached letter predated his most meaningful cooperation and, thus, its submission gave rise to a misleading impression. He set out a chronology of his post-sentencing cooperation as he saw it and suggested that the willingness of López and Cruz to travel to Miami for anticipated grand jury testimony reflected the importance that they attached to his assistance. He also professed his belief that López and Cruz had written letters to the United States Attorney recommending the filing of a Rule 35(b) motion on his behalf. In this regard, he beseeched the court either to compel the government to produce copies of the letters or to convene an evidentiary hearing.

In a memorandum decision, the district court denied relief. Even assuming the truth of the defendant's allegations as to the views of López and Cruz, the court saw only normal hierarchical functioning, characteristic of how government agencies and other stratified organizations operate, in the decision to override the recommendation of a subordinate. Emphasizing the government's decision not to use the defendant's testimony either in seeking indictments or at trial, the court perceived no basis for doubting the government's assertion that the defendant's

-5-

statements were insufficiently corroborated.  Finally, the court observed that the defendant had remained silent as to the government's averment that he had downplayed his overall role in the criminal enterprise.  This timely appeal followed.

Congress has established two vehicles through which a convicted defendant's sentence may be reduced for reasons unrelated either to his own guilt or to the integrity of the earlier proceedings in his case.  See 18 U.S.C. § 3582(c)(1); United States v. Ellis, 527 F.3d 203, 205 (1st Cir. 2008).  One of those vehicles, Rule 35(b), allows the government to move post-sentence for a reduced penalty on the ground of "substantial assistance" rendered to the government's crime-fighting cause.  In charting the contours of substantial assistance under Rule 35(b), courts have consistently looked to the virtually identical language contained in USSG §5K1.1 (providing criteria for a presentence "substantial assistance" departure in calculating a defendant's guideline sentencing range).  See United States v. Alegría, 192 F.3d 179, 184 (1st Cir. 1999) (explaining that "with regard to the meaning of 'substantial assistance,' Rule 35(b) and USSG §5K1.1 are birds of a feather").  Along these lines, the ample discretion afforded to the prosecutor in deciding whether to seek a section 5K1.1 departure is roughly equal to the discretion afforded to her in deciding whether to file a Rule 35(b) motion.  See United States v.

<u>Orozco</u>, 160 F.3d 1309, 1315-16 (11th Cir. 1998); <u>United States</u> v. <u>Gangi</u>, 45 F.3d 28, 30-31 (2d Cir. 1995).

Broad though it may be, this discretion is not unbounded. In <u>Wade</u> v. <u>United States</u>, 504 U.S. 181 (1992), the Supreme Court held that, notwithstanding the government's wide discretion in choosing whether to file a section 5K1.1 motion, it may not ground its decision in an unconstitutional motive. <u>Id.</u> at 185-86. A motive not rationally related to any legitimate governmental purpose comes within the compass of this prohibition. <u>Id.</u> at 186. This jurisprudence applies full force in the Rule 35(b) milieu, placing unconstitutional motives outside the pale of the government's discretion. <u>See</u>, <u>e.g.</u>, <u>Ellis</u>, 527 F.3d at 207; <u>United States</u> v. <u>Marks</u>, 244 F.3d 971, 975 (8th Cir. 2001).

The practical effect of this legal framework is as follows. When a defendant complains that an unconstitutional motive has animated the withholding of a Rule 35(b) motion, the government must satisfy a modest burden of production. To do so, it need only adduce facially adequate reasons explicating its decision. <u>See</u> <u>Alegría</u>, 192 F.3d at 187. This is solely a burden of production, not a burden of persuasion. <u>See</u> <u>id.</u>

Confronted with a facially adequate explanation for the government's decision not to file a Rule 35(b) motion, a defendant is bound to accept that explanation unless he can convince the court to allow discovery or to grant an evidentiary hearing. The

-7-

<u>Wade</u> Court has warned of the dangers presented by unrelenting inquiries into prosecutorial motives.  See <u>Wade</u>, 504 U.S. at 186.  Thus, neither discovery nor an evidentiary hearing should be ordered unless and until the defendant makes a "substantial threshold showing" of improper motive.  <u>Id.</u> (internal quotation marks omitted); <u>cf.</u> <u>United States</u> v. <u>Panitz</u>, 907 F.2d 1267, 1273 (1st Cir. 1990) (stating generally that the right to an evidentiary hearing in connection with a motion in a criminal case requires that "the defendant make a sufficient threshold showing that material facts were in doubt or dispute").

Judicial review in this cobwebbed corner of the law has not been much discussed.  A district court's determination of the facial adequacy of the government's proffered explanation for withholding a substantial assistance motion presents a question of law that, logically, engenders de novo review.  <u>Cf.</u> <u>United States</u> v. <u>Abdush-Shakur</u>, 465 F.3d 458, 469 (10th Cir. 2006) (holding, in context of <u>Batson</u> challenge, that appellate court reviews de novo whether the prosecutor's proffered reasons for striking a juror were facially race-neutral); <u>United States</u> v. <u>Williams</u>, 264 F.3d 561, 571 (5th Cir. 2001) (same).  Once past that point, judicial review is highly deferential.  Given a facially adequate explanation, neither discovery nor an evidentiary hearing is the norm.  Thus, the district court's refusal to allow discovery or to convene an evidentiary hearing is reviewed for abuse of discretion.

See Alegría, 192 F.3d at 189; David v. United States, 134 F.3d 470, 477 (1st Cir. 1998).

Against this backdrop, we proceed to address the defendant's contentions. In support of his allegation of arbitrariness, he tells of various harrowing experiences (e.g., death threats) and his daughter's valiant effort to supply the government with information in the hope of securing more lenient treatment for her father. He also insists that the aid he rendered was extremely valuable to the government. But even if true, these facts fall short of the threshold showing required here.

As we have indicated, prosecutors enjoy broad discretion in deciding whether to file Rule 35(b) motions. Consequently, the mere rendition of assistance — even substantial assistance — does not give rise to an inference that the government's decision not to file a Rule 35(b) motion is driven by an illegitimate motive. See United States v. Davis, 247 F.3d 322, 327 (1st Cir. 2001). After all, the Wade Court disregarded as irrelevant the defendant's attempt to embroil it in a qualitative analysis of the assistance actually tendered. See Wade, 504 U.S. at 186-87; see also Alegría, 192 F.3d at 188 n.6 (analyzing Wade). The lesson of Wade is clear: because the decision not to file a Rule 35(b) motion "may have been based not on a failure to acknowledge or appreciate [the defendant's] help, but simply on [the government's] rational assessment of the cost and benefit that would flow from moving,"

substantial assistance is a necessary, but not a sufficient, condition to a successful <u>Wade</u> challenge. <u>Wade</u>, 504 U.S. at 187.

The defendant's other endeavors to prove bad faith fare no better. While he criticizes the government for basing its decision upon his alleged minimization of his role, he virtually concedes that he <u>initially</u> downplayed his role. His argument seems to be that he later became more open and that the government's post-sentence representation to the district court was, therefore, misleading.

Yet the government specifically referenced the March 20, 2002 letter, which dealt with the defendant's initial minimizing of his actions. That was not misleading. The government can legitimately withhold a substantial assistance motion in light of such minimization, even if the defendant belatedly tries to correct his retinency. <u>Cf.</u> <u>United States</u> v. <u>Licona-López</u>, 163 F.3d 1040, 1044 (8th Cir. 1998) ("[T]he government does not act irrationally in refusing to file a substantial-assistance motion for a defendant who has provided substantial assistance but has been untruthful with the authorities while cooperating."). The fact that the defendant eventually came around neither contradicts the government's assertion nor casts doubt upon the rationality of its basis for refusing to file a Rule 35(b) motion.

Relatedly, the defendant points to his receipt of a safety valve adjustment[2] and to the government's assertion at sentencing that he had "provided ample information."  This initiative fails for an elementary reason.  There is no doctrinal imperative requiring that substantial assistance that suffices to garner a defendant a safety valve reduction <u>automatically</u> qualifies him for the added benefit of a Rule 35(b) motion.  Were there such an imperative, every defendant who received the benefit of the safety valve could expect a further windfall in the future.  That is surely not the law: the safety valve determination looks to the quantity and quality of a defendant's assistance <u>prior</u> to sentencing; the Rule 35(b) determination may take that assistance into account, but it looks primarily to the quantity and quality of the defendant's assistance <u>after</u> sentencing.

Next, the defendant alludes to letters supposedly sent by López and Cruz to the United States Attorney in support of Rule 35(b) relief.  These letters, he asserts, show that the persons with the most detailed knowledge of his assistance thought that the filing of a Rule 35(b) motion would be appropriate.  Assuming that these letters exist — and the record is opaque on that point — we

---

[2]To qualify for a safety valve reduction, a defendant must among other things truthfully provide all information he possesses about the offense of conviction.  <u>See</u> USSG §5C1.2(a)(5); <u>see</u> <u>also</u> <u>United States</u> v. <u>Maduka</u>, 104 F.3d 891, 894-95 (6th Cir. 1997).  The scope of the disclosure demanded by this subsection is expansive.  <u>United States</u> v. <u>Stephenson</u>, 452 F.3d 1173, 1180 (10th Cir. 2006).

agree with the district court that there is nothing suspicious about a superior resisting a subordinate's recommendation. That is precisely the reason that many offices are organized hierarchically. So here: the head of the criminal division possessed the authority to override López and Cruz on the basis of her own evaluation of the facts — and she exercised that authority.

In a further effort to carry the day, the defendant draws our attention to an ostensible inconsistency between a Department of Homeland Security report stating that information disclosed by the defendant in a March 1, 2003 debriefing corroborated the statements of Eliseo Colón-Soto and the government's assertion that it had declined to file a Rule 35(b) motion in part because his statements were not "independently corroborated." This is less an inconsistency than an example of selective reading. On the same page describing the defendant's statements as not independently corroborated, the government clarified exactly what it meant: that the information proffered by the defendant "was not sufficiently corroborated by independent admissible evidence" and "was contradicted by another cooperating individual as to the dates of the events."

This leaves the defendant's entreaty for discovery or an evidentiary hearing. In our view, allowing that requested relief in the circumstances of this case would flout the Wade Court's teachings.

Refined to bare essence, the defendant seeks to justify discovery or an evidentiary hearing by suggesting that evidence supporting his position lies in the government's possession. The Wade Court, however, deliberately erected a high protective threshold in order to safeguard the government's files unless a defendant could make a compelling case for access to that information. See Wade, 504 U.S. at 186. Were we to allow the defendant to boot-strap himself into discovery or an evidentiary hearing, we would be endorsing the very kind of limitless fishing expeditions that the Wade Court sought to prevent.

We need go no further. The defendant, though ably represented, has plainly failed to muster the requisite showing of improper motive on the part of the government. Under the circumstances, we have scant difficulty in concluding that the district court did not abuse its discretion in refusing to grant the requested relief.

**Affirmed**.