[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14713
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00232-MSS-JSS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ALBERTO BAGUI-SOLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 8, 2019)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Luis Alberto Bagui-Solis appeals his 120-month prison sentence—the

mandatory-minimum sentence for his offense—on the ground that the government

improperly refused to file a substantial-assistance motion that would have allowed the district court to sentence him below the mandatory minimum, as it wished to do. He contends that the government's refusal was an abuse of discretion, in bad faith, and in violation of the plea agreement, and that the district court should have held an evidentiary hearing. After careful review, we affirm Bagui-Solis's sentence.

## I.

Bagui-Solis was indicted along with two codefendants for trafficking cocaine on a go-fast vessel in international waters. *See* 46 U.S.C. §§ 70503(a), 70506(a) & (b). He pled guilty under a written agreement in which he agreed to cooperate with the government. In exchange for his plea, the government agreed to make certain favorable recommendations at sentencing and "to consider," in its sole discretion, whether Bagui-Solis's cooperation amounted to "substantial assistance" warranting a motion for a sentence reduction under either U.S.S.G. § 5K1.1 or Rule 35(b), Fed. R. Crim. P.

Because the offense to which Bagui-Solis pled guilty carried a mandatory-minimum sentence of ten years of imprisonment, a substantial-assistance motion was his only way[1] of receiving a sentence below ten years. *See* 18 U.S.C. § 3553(e)

---

[1] In *United States v. Pertuz-Pertuz*, we held that defendants like Bagui-Solis who were convicted under the Maritime Drug Law Enforcement Act were not eligible for relief from mandatory-minimum sentences under the "safety valve," 18 U.S.C. § 3553(f). 679 F.3d 1327, 1328–29 (11th Cir. 2012) ("[T]he plain text of the statutes shows that convictions under Title 46 of the U.S. Code—like Defendant's—entitle a defendant to no safety-valve sentencing relief."). After Bagui-Solis was sentenced, however, Congress amended the safety valve to make MDLEA

("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."); U.S.S.G. § 5K1.1.  To that end, Bagui-Solis met with the government in a proffer session and provided truthful information.

When sentencing came around, however, the government refused to move for a reduction based on substantial assistance, despite having done so for a cooperating codefendant.  Asked by the district court to explain the discrepancy, the government stated that, while Bagui-Solis had provided information about the particular go-fast operation in this case and the roles of those on board the vessel, the other defendant, who was the master of the vessel, had provided additional "information about Tier 2 organiz[ers]."  Additionally, the government asserted that the other defendant spoke with law enforcement at an earlier time, which, in the government's view, had a "domino effect" in this case.

The district court expressed distaste at the idea that the government would simply reward the first defendant to cooperate, and it lamented the lack of "consistency" in the government's decisions to reward cooperating defendants more generally.  After hearing testimony from the agent involved in the proffers, the court

---

defendants eligible for relief on a prospective basis under this provision.  *See* First Step Act of 2018, Pub. L. 115-391, § 402, 132 Stat. 5194 (2018).

prompted the government to give a reason for the differential treatment aside from timing and scheduling issues.  In response, the government elaborated that the other defendant had provided both more information about this particular go-fast operation than did Bagui-Solis and also "Tier 2 information" about those higher up in the smuggling operation.

With that explanation, and in the absence of a substantial-assistance motion, the district court sentenced Bagui-Solis to ten years of imprisonment, the mandatory minimum.  The court stated that, if the mandatory minimum did not apply, it would have sentenced him "in the range of 87 months under the guidelines."  Bagui-Solis now appeals.

## II.

We review *de novo* whether the government has breached a plea agreement. *United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008).  We review the denial of an evidentiary hearing for an abuse of discretion.  *United States v. Brown*, 441 F.3d 1330, 1349–50 (11th Cir. 2006).

The government is bound by its material promises that induce a defendant to plead guilty.  *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).  When judging whether the government has violated a plea agreement, "[w]e apply an objective standard to decide whether the government actions are inconsistent with the defendant's understanding of the plea agreement, rather than reading the

4

agreement in a hyper-technical or rigidly literal manner." *Id.* (citation and quotation marks omitted). Where the language of the agreement is unambiguous, "we are limited to the unambiguous meaning of the language in the agreement." *United States v. Copeland*, 381 F.3d 1101, 1106 (11th Cir. 2004).

Here, the plea agreement unambiguously gave the government sole discretion to determine whether Bagui-Solis provided substantial assistance warranting a sentence reduction. While the government promised "to consider" whether Bagui-Solis's cooperation amounted to substantial assistance, it did not promise to file such a motion if he cooperated. The plea agreement expressly provided that the determination of substantial assistance "rest[ed] solely" with the government and could not be challenged by Bagui-Solis. Because the plea agreement left to the government's sole discretion whether to file a substantial-assistance motion, the government did not breach the agreement by failing to file such a motion.

For that reason, Bagui-Solis's reliance on general contract principles is off the mark. As we explained in *United States v. Forney*, we do not conduct a contract analysis when the government promises only to consider a defendant's assistance and there is no evidence that the government did not so, which is the case here. 9 F.3d 1492, 1499 n.2 (11th Cir. 1993) (explaining that the "contract-analysis cases," like *Santobello v. New York*, 404 U.S. 257 (1971), did not apply because "[t]here is no evidence that the government did not consider Forney's assistance, which is all

that it promised to do." (emphasis omitted)).  Instead, our analysis is governed by the principles established by the Supreme Court in *Wade v. United States*, 504 U.S. 181 (1992).  *Id.* at 1499 n.2, 1501–02.

According to *Wade*, federal courts may review the government's refusal to file a substantial-assistance motion only if the defendant makes a "substantial threshold showing" that the "refusal was based on an unconstitutional motive," such as race or religion, or that the "refusal to move was not rationally related to any legitimate Government end." *Wade*, 504 U.S. at 185–86.  "A defendant who merely claims to have provided substantial assistance or who makes only generalized allegations of an improper motive is not entitled to a remedy or to even an evidentiary hearing." *United States v. Dorsey*, 554 F.3d 958, 961 (11th Cir. 2009); *see also Wade*, 504 U.S. at 186; *Forney*, 9 F.3d at 1501 n.4, 1502 n.5 (explaining that generalized allegations of bad faith are not sufficient under *Wade*).

Here, Bagui-Solis has not made the threshold showing required by *Wade*.  He does not claim that the government's refusal was based on an unconstitutional motive.[2]  And on this record, we cannot say that the government's refusal was not rationally related to a legitimate government end.  *See Wade*, 504 U.S. at 185–86.

---

[2] We do not consider Bagui-Solis's argument that the government's actions in this case evince discrimination for non-English speaking defendants who are represented by English-speaking attorneys because it was raised for the first time in his reply brief.  *See United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court." (alteration and quotation marks omitted)).

6

Bagui-Solis contends that one of the government's stated reasons for denying a sentence reduction—that his codefendant provided information first—is not a good-faith or legitimate reason because it was caused by the government's own conduct in scheduling the interviews.  But he does not dispute, and in fact admits, that his codefendant was able to provide information that he did not and could not.  Specifically, the government proffered, and the district court accepted, that the codefendant, who was the master of the vessel, provided both more information about his particular go-fast operation in this case than did Bagui-Solis and also "Tier 2 information" about those higher up in the smuggling operation.

Thus, the government justified its decision to reward his codefendant and not Bagui-Solis in part on the respective value of the information provided, not simply *when* the information was provided.  We cannot say this is not a legitimate government end because the substantial-assistance regime is designed "to benefit the government in its prosecution efforts," not simply "to reward a cooperative defendant."  *See United States v. Orozco*, 160 F.3d 1309, 1316 (11th Cir. 1998) (quotation marks omitted).  Perhaps unfortunately, the fact that Bagui-Solis fully cooperated with the government and provided truthful information does not entitle him to a sentence reduction.  *See id.*; *Dorsey*, 554 F.3d at 961.  While it may seem unfair that Bagui-Solis's codefendant was able to provide more valuable information

7

precisely because he had a more culpable role in the offense, that does not demonstrate that the government acted in bad faith or for illegitimate reasons.

Finally, we are bound to conclude Bagui-Solis's argument that the district court should have held an evidentiary hearing fails for two reasons. First, no evidentiary hearing was required because Bagui-Solis failed to make out the required threshold showing under *Wade*. *See Wade*, 504 U.S. at 186–87; *Dorsey*, 554 F.3d at 961. Second, the court at sentencing probed the government's reasons for denying a reduction and heard testimony from the responsible agent, so it is not clear what an additional hearing would have accomplished.

For these reasons, we affirm Bagui-Solis's sentence.

**AFFIRMED.**

8