**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Billy Joe PINTER, Defendant–Appellant.**

**No. 89–7061.**

United States Court of Appeals,
Tenth Circuit.

July 28, 1992.

---

Karen Skrivseth, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Craig Bryant, Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant.

Before SEYMOUR, HOLLOWAY and ANDERSON, Circuit Judges.

PER CURIAM.

Defendant-appellant Billy Joe Pinter, Jr. petitions this court for a recall of our mandate and reinstatement of his former appeal.[1] Pinter, who dismissed his appeal pursuant to a cooperation agreement with the United States Attorneys of the Eastern and Northern Districts of Oklahoma, alleges that the government breached the agreement. The submissions by Pinter and the government demonstrate that the government promised to respond to Pinter's Fed. R.Crim.P. 35 motion, fully advising the court of his cooperation in criminal proceedings, but the government failed to do so. We recall our mandate dismissing Pinter's appeal and direct that his appeal, No. 89–7061, be reinstated.

I

The underlying facts are essentially undisputed. The motion of Pinter, the government's response, and a brief filed by counsel appointed to represent Pinter show the following:

Pinter and several other individuals were arrested on charges of participation in the creation and operation of a methamphetamine laboratory in a trailer near Beggs, Oklahoma. These offenses occurred in early 1987. Following a jury trial in the United States District Court for the Eastern District of Oklahoma, Pinter was convicted on one count of conspiracy to manufacture and distribute methamphetamine and five related substantive counts. On June 2, 1989, Pinter was sentenced to 15 years'

---

1. After examining the briefs and record, this panel has determined unanimously that oral argument would not materially assist in the determination of this motion. *See* Fed.R.App.P. 34(a)(3); 10th Cir.R. 34.1.9. The motion is therefore submitted without oral argument.

imprisonment. He filed a timely appeal to this court, No. 89–7061.

In June 1990, Pinter and his attorney began negotiations with Messrs. John Morgan and Paul Hess, respectively Assistant United States Attorneys ("AUSAs") from the Northern and Eastern Districts of Oklahoma. The negotiations addressed Pinter's potential cooperation in an unrelated methamphetamine investigation. In early July 1990 the AUSAs and Pinter signed a written agreement which provides, in relevant part:

> In return for [defendant Pinter's] truthful testimony before any federal grand jury investigating illegal matters, as well as truthful testimony in any trial that may arise out of any case, or any investigation or related investigations in any district, *the government will respond to defendant's timely filed Rule 35, F.R.C.P., Motion for Reduction of his 15 year sentence, by fully advising the court of his cooperation,* and will grant him immunity for the use of his disclosures and testimony. *Additionally, the defendant has agreed to dismiss his current pending appeal herein.*

Def.Ex. 1 (Tab 3) (emphasis changed). The government also entered into an similar agreement with one of Pinter's codefendants, Dora Garrison.

Pursuant to these agreements, Pinter and Garrison testified before a federal grand jury. Pinter also provided a sworn statement to the investigating officials on the matters under investigation. As a result of this assistance, the subject of the investigation pled guilty to conspiring to manufacture and distribute methamphetamine. *See* Def.Ex. 2 (letter of AUSA Morgan to U.S. Parole Commission) and Ex. 7, Tab 3. Thus there is no doubt as to Pinter's full cooperation and compliance with

the agreement.[2] Pinter also moved to dismiss his pending appeal. This court granted Pinter's motion on September 4, 1990, before briefs were filed. The mandate issued.

On September 10, 1990, Pinter filed a motion pursuant to Fed.R.Crim.P. 35(b) in federal district court seeking a reduction of his sentence.[3] In the motion, Pinter requested an evidentiary hearing to "present evidence in support of his motion from witnesses including [AUSA] Jack Morgan[.]" In a brief filed in support of this motion, Pinter asked for leniency based on family hardship and "substantial cooperation." With respect to the latter ground, Pinter's brief stated that he had "voluntarily cooperat[ed] with the government and provid[ed] information which has been used or will be used to prosecute other individuals." Def.Ex. 4B at 2. The brief also noted that "[t]he attorneys for the government both in the Eastern District and Northern District of Oklahoma ... have asked that the Court be informed of their willingness to come forward and testify on behalf of Defendant Pinter, so that the Court can be fully informed of the nature, extent and value of his cooperation." *Id.* Three months after the Rule 35 motion was filed, the district court denied Pinter's motion by minute order of December 13, 1990. No evidentiary hearing was held.

The record establishes that the government filed no response to Pinter's motion. *See* Government's Response Brief at 5. The record also shows that the government had filed a written response to an earlier Rule 35 motion made by Garrison, detailing her cooperation. *See* Def.Ex. 7, Tab 3.

On December 26, 1990, Pinter moved for rehearing on his Rule 35 motion asserting the same grounds as before. The govern-

---

**2.** *In AUSA Morgan's letter to AUSA Hess dated April 15, 1992, he stated in part:*

> There is no dispute as to [Pinter's] cooperation and in this regard we must recognize that another co-defendant, Dora Jean Garrison, time-wise, likewise entered into the same type agreement.
>
> Mr. Pinter was brought to the Northern District to testify before the July, 1990, Grand Jury. On July 11, 1990, he and Garrison both,

> not only testified before the Grand Jury, but also provided an additional interview. Again, I must reiterate that in my opinion Garrison and Pinter lived-up to their cooperation agreements.

**3.** This motion was made under Rule 35 as applicable to offenses committed prior to November 1, 1987.

ment, again, filed no response. By order of May 7, 1991, the court denied Pinter's request for rehearing. This *pro se* petition and motion to recall the mandate followed.[4]

## II

■ We begin by noting that Pinter's motion to reinstate his appeal is properly brought in this court in the first instance. As we held in *United States v. Winterhalder*, 724 F.2d 109 (10th Cir.1983) (*per curiam*): "The filing of a notice of appeal ... transfers jurisdiction over the matter from the district court to the court of appeals, and the power to reinstate an appeal previously dismissed ... lies with the court of appeals, not the district court." *Id.* at 111. Thus, Pinter correctly comes to this court for the relief he seeks.

■ On the merits, Pinter argues that the government breached the cooperation agreement because it failed to respond to his Rule 35 motion, as promised. We must agree that the record establishes such a breach. Pinter asserts that he completely fulfilled his part of the agreement by his cooperation and testimony and the dismissal of his appeal. He argues that under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), he is entitled to have his appeal reinstated.

In response, the government does not dispute that Pinter fulfilled his obligations under the agreement. Instead, the government contends that it did not breach the agreement because "the agreement did not specify the form the government's response would take" and "[n]othing in the record suggests that the parties contemplated that the government's response would be in writing." Gov.Resp.Br. at 8 & 9. Thus, the government insists "it was [the district court's] refusal to hold an evidentiary hearing on appellant's Rule 35 motion, rather than any failure by the government ... that led to the district court's lack of awareness of the details of appellant's cooperation." *Id.* at 9.

Cooperation agreements, like plea agreements, function as an "essential part" of the criminal justice process and are "highly desirable" as a means to assist law enforcement investigative efforts. *Cf. Santobello*, 404 U.S. at 261, 92 S.Ct. at 498. Many plea agreements require some cooperation by defendants in ongoing investigations. Additionally, cooperation agreements like the one here often result in the surrender of valuable constitutional rights.

■ In light of these considerations, we hold that "[a] cooperation agreement is analogous to a plea bargain[,]" and therefore that the same analysis applies to both types of agreements. *See United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir.1983). Thus, promises in cooperation agreements, "whether directly or indirectly made, must be fulfilled to their fullest extent in furtherance of fair and proper administration of justice." *United States v. Avery*, 621 F.2d 214, 215 (5th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981); *see also Santobello*, 404 U.S. at 261, 92 S.Ct. at 498 (disposition by agreement "presupposes fairness in securing agreement between accused and a prosecutor"). Moreover, construction of such agreements "requires determining what the defendant reasonably understood" when the agreement was executed, *see United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir.1989); *United States v. Greenwood*, 812 F.2d 632, 635 (10th Cir. 1987). "We will not allow the government to resort to a rigidly literal construction of the language" of the agreement. *Shorteeth*, 887 F.2d at 256. Indeed, we have noted that " '[a] plea agreement is not an appropriate context for the government to resort to a rigidly literal approach in the construction of language.' " *United States v. Greenwood*, 812 F.2d 632, 635 (10th Cir.1987).

In light of these principles and the undisputed facts we must hold that a breach of the agreement is established here. Pinter had the right to reasonably expect the government to put of record its response to

---

**4.** By order of June 17, 1992, we granted Pinter's accompanying motion for the appointment of counsel. The federal public defender's office represents Pinter on this motion for reinstatement of his appeal.

his Rule 35 motion for the trial court. By the plain terms of the agreement, the government promised that it *"will respond"* to Pinter's Rule 35 motion "by *fully advising the court of his cooperation* [.]" Def.Ex. 1 at 1, Tab 3 (emphasis added). The government admits "no response was filed[,]" and that the court was never "fully advised" about Pinter's cooperation. *See* Gov.Resp.Br. at 5 & 9.[5] We are convinced that breach of the cooperation agreement by the government is shown, as well as Pinter's compliance with it.

The government suggests through AUSA Morgan's letter that whether a formal response was filed to Pinter's motion appears immaterial because the judge was aware of his cooperation through Pinter's attorney's brief in support of Pinter's motion. Of course, the representation by Pinter's own attorney was not of the same weight or significance to the trial judge as such a government representation. The government's acknowledgment of his full cooperation was what Pinter was promised and that promise was the critical one which was not fulfilled.

■ The government also suggests that even if it did breach the agreement, we should remand the case to the district court to permit the government now to file a response and for consideration of the Rule 35 motion anew. We are, however, moved by Pinter's plea for relief as the victim of the breach. Where a cooperation agreement "has not been honored by the Government, the fashioning of an appropriate remedy is largely a matter of the exercise of the sound discretion of the court according to the circumstances." *United States v.*

*Bowler,* 585 F.2d 851 (7th Cir.1978). As noted earlier, in these circumstances where the breach occurred during the pendency of the appeal, this court is the proper one for the lodging of Pinter's motion. We find it appropriate for us to grant the relief requested by Pinter, there being no undue burden on the parties since the appeal was dismissed before briefing or argument.

Accordingly, the mandate issued following dismissal of the appeal herein on September 4, 1990, is recalled. The Clerk of this Court is directed to reinstate this appeal and to enter appropriate orders for the filing of the record, briefing and argument.[6] This order shall be issued forthwith and transmitted to the parties and the Clerk of the District Court.

IT IS SO ORDERED.

---

5. Moreover, in a recent letter from AUSA Morgan to AUSA Hess, the two government signatories to Pinter's agreement, Morgan states: "When I was advised of Pinter's motion, I [sic] called you and suggested that the response to the Garrison motion would serve as a model for a similar response to the Pinter motion. It was my understanding that such would be filed by your office, accordingly." Letter of April 15, 1992, Addendum to Gov.Resp.Br. at 18. We are satisfied that the record shows that the government agreed to file a written response to Pinter's Rule 35 motion.

The government suggests that we excuse its nonperformance because the district court did

not hold an evidentiary hearing at which Pinter could call Morgan to testify. We are unimpressed. The government had the opportunity "to respond" to the Rule 35 motion. Indeed, the record shows that the court waited over three months before ruling on Pinter's motion, *see* Def.Ex. 11 (Docket Sheet), and then waited again for over four months before denying Pinter's motion to reconsider the denial of relief on his Rule 35 motion.

6. The reinstatement of Pinter's direct criminal appeal shall allow him to raise any and all claims of error properly available to him. *Winterhalder,* 724 F.2d at 112.