UNITED STATES of America, Plaintiff,

v.

James Byron McINTOSH, Defendant.

Cr. A. No. 91–1224M.

United States District Court, D. Colorado.

Dec. 1, 1992.

Craig F. Wallace, Asst. U.S. Atty., Denver, CO, for the U.S.

Marc P. Mishkin, Denver, CO, for defendant.

## AMENDED ORDER

ABRAM, Chief United States Magistrate Judge.

The matter which comes before this court is regarding the application for payment of fees submitted by Defense counsel.

### I. Facts

Defendant was arrested on November 15, 1991 for possession with intent to distribute 265 grams of cocaine. Three days later, a private attorney was appointed. The Court stated "This appointment shall remain in effect until terminated by the Court or a substitute attorney is appointed." (November 18, 1991 Order). On December 9, 1991, the charges against defendant were dismissed without prejudice, pending investigation and the possibility of a cooperation agreement. Appointed counsel served as negotiator and liaison between Defendant and the government during discussions of the possible agreement.

The government and the Defendant reached an agreement on February 10, 1992, under which in return for work as a proactive participant in undercover operations, Defendant's sentence would be accordingly reduced. In a December 6, 1991 letter from the Assistant United States Attorney to appointed counsel, the government's position was outlined:

"My present plans are to seek an indictment in early January. Based on the investigative information aggregated thus far, it appears that James Byron McIntosh could be charged with two distributions of crack cocaine (each to an undercover police officer) totalling approximately 45 grams, as well as distri-bution of powder cocaine charged in the criminal complaint.

(December 6, 1991 letter from the Assistant United States Attorney to defense counsel). The letter indicated that the possible sentence for the two charges of distribution of crack cocaine that Assistant United States Attorney wished to pursue against the Defendant totaled a possible 13 years without parole. They planned on lowering the sentence to five years in return for Defendant's cooperation. Defendant was given no assurances or promises, and the government reserved the right to decide the worth of Defendant's assistance: "The determination as to the value of the cooperation ultimately rendered by McIntosh lies *solely* with the good faith discretion of the United States Attorney's Office for the District of Colorado." *Id.*

Defendant, counsel and case agents periodically met to assess the progress of the cooperation agreement. Despite these meetings and pursuant to its reserved right, the government repudiated the cooperation agreement on or around April 1, 1992, citing Defendant's lack of cooperation. Appointed counsel strenuously objected to the termination of the agreement, arguing that it was the government that impeded the success of the operation by not assigning the proper personnel to the case. Counsel charged that Defendant's contacts refused to meet with a caucasian drug buyer, and the government refused to assign an African–American agent to the case.

Nevertheless, Defendant was again charged with possession with intent to distribute cocaine and the cooperation agreement was canceled. Appointed counsel remained in contact with Defendant until the middle of May, and Defendant has not been seen since. Because of the loss of contact, counsel withdrew from representing Defendant on August 12, 1992 and subsequently filed this application for attorney fees. The government does not oppose the motion.

### II. Analysis

The propriety of paying fees to an attorney for work done after charges have been

dismissed is a question of first impression in this jurisdiction. The Courts, however, have spoken often to the necessity of appointed counsel at all stages of the criminal process.

The District of Columbia Circuit has stated that the appointment of counsel should occur early, to ensure that Defendant not incur extended and unwarranted pretrial incarceration and that counsel may procure release through bail or other procedures. *Williams v. United States,* 394 F.2d 957, 959 (D.C.Cir.1968). Furthermore, courts agree that the focus of the appointment is to protect the constitutional rights of the indigent accused, not for the benefit of the attorney. *United States v. Cook,* 628 F.Supp. 38, 41 (D.Colo.1985); *United States v. Alexander,* 742 F.Supp. 54 (N.D.N.Y.1990).

To protect the constitutional rights of the indigent accused, the appointment should be made before the indictment. In *Williams,* the court stated, "The importance of appointed counsel's continuing to function actively on behalf of his client throughout the preindictment period cannot be overemphasized." *Williams v. United States,* 394 F.2d at 959. The Ninth Circuit has held that the public defender's continued representation throughout a year-long preindictment period was proper, where counsel was pursuing an equitable motion to compel the return of his client's seized firearms. *United States v. Martinson,* 809 F.2d 1364, 1370 (9th Cir.1987). In *Martinson,* the government promised for over a year that an indictment would be forthcoming but never delivered on that promise. The circuit held that once validly appointed, counsel was "clearly justified" in continuing said representation. *Id.*

■ Appointed counsel's representation should continue from the defendant's initial appearance through appeal, and the attorney's services should be utilized at every stage of the proceedings. *United States v. Dangdee,* 608 F.2d 807, 809 (9th Cir.1979). *Dangdee* involved the appointment of counsel under the Criminal Justice Act, and the court held that the very "design of the Act contemplates the early appointment of counsel whose services are to continue through every stage of the proceedings." *Id.* Counsel's responsibilities do not end when the verdict is announced or the sentence is imposed; the attorney is responsible for posttrial procedures and processes as well. *Smotherman v. Beto,* 276 F.Supp. 579, 584 (N.D.Tex.1967).

■ Indeed, the only way to terminate the appointment of a public defender is if the Federal Magistrate Judge or Court determines that the defendant is no longer indigent and can afford to retain counsel. *United States v. Dangdee,* 608 F.2d at 809. The Ninth Circuit explained that "continued representation by appointed counsel on appeal is, in effect, 'automatic' unless a change in defendant's financial situation renders him ineligible for continued representation." *Id.* In this case, the appointment order directly stated that the appointment "shall remain in effect until terminated by the court or a substitute attorney is appointed." (November 18, 1992 Order).

■ Counsel in this case participated in the negotiation and continuation of the cooperation agreement between the defendant and the government. This representation took place between dismissal of the first indictment and the promised second indictment, and such representation is similar to that of an attorney's role in plea bargaining. The Tenth Circuit has held that cooperation agreements and plea agreements are analogous and should be analyzed similarly. *United States v. Pinter,* 971 F.2d 554 (10th Cir.1992). In *Pinter,* the defendant petitioned for reinstatement of the appeal that was dismissed pursuant to a cooperation agreement. Defendant claimed that the government breached the cooperation agreement. *Id.* at 557. Regarding the importance of cooperation agreements, the court stated:

> Cooperation agreements, like plea agreements, function as an "essential part" of the criminal justice process and are "highly desirable" as a means to assist law enforcement investigative efforts. Many plea agreements require some cooperation by defendants in ongoing investigations. Additionally, cooperation

agreements like the one here often result in the surrender of valuable constitutional rights.

*Id.* The United States Supreme Court has stated that failing to advise the defendant of his right to counsel during plea bargaining necessitates vacating the guilty plea. *Santobello v. New York,* 404 U.S. 257, 265–266, 92 S.Ct. 495, 500–501, 30 L.Ed.2d 427 (1971); *Walker v. Johnston,* 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941).

The defendant in this case agreed to cooperate in return for a possible reduction in his sentence. Doing so, he surrendered valuable constitutional rights, such as the right not to incriminate himself and the right to counsel. This cooperation agreement, then, falls under the umbrella of *Pinter* and *Santobello.* Treating it as a plea agreement, the cooperation agreement necessitated the presence of counsel because of the surrender of constitutional rights involved. It is also helpful for an indigent defendant to understand the terms and ramifications of such an agreement.

III. Conclusion

The case law cited above clearly states that the appointment of counsel lasts throughout every stage of the proceedings, from initial appearance through appeal. The *Pinter* court asserted that cooperation agreements are an "essential part" of the criminal justice process. Therefore, the appointment of counsel was effective throughout the negotiation and continuation of the cooperation agreement.

The only way to terminate this appointment was by court order, following a determination that the defendant was no longer indigent. The court never so ordered. The representation continued well into the summer, until August 12, 1992, when counsel resigned because he had lost contact with the defendant.

The facts clearly indicate that the defendant was in need of representation during this time. A further indictment was promised, as in *Martinson,* and the government was seeking an eventual-five year prison sentence. The defendant was indigent and needed the terms and consequences of the

agreement explained to him. And finally, because the appointment lasted through the cooperation agreement stages of the proceeding and was not terminated until August, long after the government had repudiated the agreement, the payment of attorney fees in this case is proper.

IT IS THEREFORE ORDERED that the application for payment of fees submitted by Defense counsel is hereby GRANTED.