**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROGER CHARLES CROBARGER,

Defendant - Appellant.

No. 04-4264

(D. Utah)

(D.C. No. 2:95-CR-119-G)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **ANDERSON** , and **O'BRIEN** , Circuit Judges.

---

Roger Crobarger was sentenced in the United States District Court for the

District of Utah to twenty years' imprisonment on charges of conspiracy to import

a controlled substance, in violation of 21 U.S.C. §§ 952, 960(b)(1), and 963;

tampering with a witness, in violation of 18 U.S.C. § 1512(a)(1)(A); and use of

interstate commerce in the attempt to murder for hire, in violation of 18 U.S.C.

§ 1958. Crobarger appeals the district court's denial of his motion to compel the

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

filing in the District of Utah of a Rule 35(b) motion to reduce his sentence, based on a promise made to him by an Assistant United States Attorney for the District of Colorado. For the reasons set forth below, we affirm.

## BACKGROUND

Crobarger's underlying prosecutions, resulting in his current imprisonment, took place in the United States District Court for the District of Utah. Crobarger originally received a twenty-year prison sentence in January 1997 following his guilty plea to three counts of conspiracy to import a controlled substance. He later received an additional five-year prison sentence after he was convicted, following a jury trial, of tampering with a witness and attempted murder for hire. The five-year sentence reflected the court's application of a downward departure, pursuant to 18 U.S.C. § 3553, after the U.S. Marshal's Office presented evidence at the sentencing hearing that Crobarger had provided substantial assistance in aborting a planned jail escape outside the federal district courthouse in Salt Lake City. The court ordered that this five-year sentence run consecutively to the earlier twenty-year sentence. Crobarger appealed his conviction in that case. However, he agreed to dismiss the appeal after Richard McKelvie, an Assistant United States Attorney (AUSA) in the District of Utah, agreed to file a Rule 35(b) motion requesting that the two sentences run concurrently rather than

consecutively. The court granted that motion and modified Crobarger's sentence accordingly. This court dismissed Crobarger's appeal in December 1998. [1]

Following his sentencing, Crobarger was transferred to a federal prison in Florence, Colorado. According to District of Colorado AUSA George Gill, federal authorities including the Bureau of Prisons, the FBI, and the Department of Justice Office of Inspector General had "for years" been investigating Walter Walsh, a food service worker at that prison, on suspicion of bringing and distributing drugs inside the prison but had been unable to gather sufficient evidence to prosecute him. Hr'g Tr. at 11, R. Vol. IV. In the summer of 1999, Crobarger approached prison officials to inform them that Walsh and some inmates were planning to bring drugs into the prison. Crobarger also "expressed his willingness to cooperate in the investigation and possible prosecution" of Walsh. Appellant's Opening Br. at 4-5.

With Crobarger's assistance, a sting operation took place on December 20, 1999, resulting in Walsh's arrest. AUSA Gill, who was assigned to the Drug Task Force of the United States Attorney's Office in Colorado, then became involved in Walsh's case and began preparing Crobarger as a witness. There is no indication in the record that, in their initial meetings, AUSA Gill made any promise to Crobarger that his cooperation would result in the filing of a Rule

---

[1]We grant Crobarger's motion to take judicial notice of this prior appeal.

-3-

35(b) motion to reduce Crobarger's sentence. Indeed, AUSA Gill testified that it is his practice not to make a Rule 35(b) offer to cooperating inmates "until after they have cooperated fully with the government and finish their obligation as far as [he] s[ees] it." Hr'g Tr. at 15, R. Vol. IV. He cited as his reasons for operating in this way his concern with ensuring that the inmate fulfills his obligation and his desire to avoid coming under the disclosure requirements of Giglio v. United States, 405 U.S. 150 (1972). [2]

AUSA Gill met with Crobarger "one or two times prior to" Walsh's indictment and "at least six different times in connection with his preparation for trial." Mem. Decision & Order at 5, R. Vol. I. This preparation occurred over a period of three years, as Walsh on a number of occasions agreed to enter a guilty plea and then changed his mind, resulting in repeated postponements of the trial date. Meanwhile, since the time of Walsh's arrest, Crobarger had been moved for his own protection, initially to an isolated cell in the segregated housing unit of the Florence prison, and later to another prison on the east coast. He was brought back to Colorado at least twice in preparation for trials that ultimately did not

---

[2]In Giglio, the Court held that "'[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within th[e] general rule'" set forth in Brady v. Maryland, 373 U.S. 83 (1963). United States v. Geames, 427 F.3d 1333, 1336 (10th Cir. 2005) (quoting Giglio, 405 U.S. at 154) (further quotation omitted).

occur and was again kept for extended periods in a segregated cell or in the Federal Detention Center rather than in a general prison population. According to Crobarger, now in his sixties, he also "developed heart arrhythmia and high blood pressure" during this period. Appellant's Opening Br. at 6.

In mid-March 2003, after Walsh entered a provisional plea to a Class A misdemeanor, AUSA Gill told Crobarger that he would file a Rule 35(b)[3] motion requesting a reduction in Crobarger's sentence even though the Walsh case was not yet resolved. In his testimony, AUSA Gill explained that because of the extended delays that had already occurred in the Walsh case and because he still "ha[d] no clue what the future [would] hold with respect to the ultimate disposition of the case," he decided out of a sense of fairness to Crobarger that he would file a Rule 35(b) motion despite his usual concerns. Hr'g Tr. at 21, R. Vol. IV. After discussion with Crobarger, he agreed to recommend that Crobarger's sentence be reduced to time served, which would in effect cut the length of Crobarger's imprisonment approximately in half. AUSA Gill testified that, in exchange, Crobarger undertook the continuing obligation to "cooperate with the government, [and] testify if necessary at any trial or any other future hearing in

---

[3]Under Rule 35(b), "[u]pon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant[]" provided "substantial assistance" in investigating or prosecuting another person and the information was not known or not considered useful within a year of sentencing. Fed. R. Crim. P. 35(b)(2).

the event that this matter didn't go to sentencing, judgment and commitment." Id. at 23.

AUSA Gill further testified that he intended to bind the United States to his promise to Crobarger and that he did not need permission from his supervisor to make such a promise in the circumstances of this case. He also indicated that he had twice made similar promises to inmates who had been sentenced in other federal districts and had obtained the cooperation of the United States Attorney's Offices in those districts in filing Rule 35(b) motions.

Later in March 2003, AUSA Gill contacted AUSA McKelvie in the United States Attorney's Office in the District of Utah regarding the Rule 35(b) motion. AUSA McKelvie sent him the appropriate format for a motion to be filed in the District of Utah court. AUSA Gill, with input from Crobarger's attorney Richard Van Wagoner, [4] then prepared a Rule 35(b) motion. After receiving the motion from AUSA Gill, AUSA McKelvie submitted it to the screening committee in his office. The committee refused to approve the submission of the motion to the court for the District of Utah. Paul Warner, the United States Attorney for the

---

[4]Although Van Wagoner was not present at the time AUSA Gill and Crobarger discussed the Rule 35(b) motion, Van Wagoner testified that Crobarger had retained him "in connection with the Rule 35(b) motion" early on in the process of Crobarger's cooperation with AUSA Gill. Hr'g Tr. at 57, R. Vol. IV. He further testified that AUSA Gill refused to discuss such a motion when he contacted him during the year 2000.

District of Utah, subsequently denied Van Wagoner's request to reconsider this decision. Warner reasoned that AUSA Gill's promise to Crobarger "was not made until the prison investigation was complete and the target of the investigation had pleaded guilty" and that therefore "[t]he promise had no impact on Mr. Crobarger's decision to participate" in the investigation. Letter of Sept. 26, 2003, R. Vol. I. He also pointed to AUSA Gill's failure to communicate with the Utah U.S. Attorney's Office prior to making the promise. Warner further indicated his view that, "after weighing the value of [Crobarger's] assistance in a case that resulted in a misdemeanor conviction of one defendant, against the seriousness of Mr. Crobarger's conduct and prior sentencing consideration given him, . . . no further reduction in sentence is warranted at this time." Id.

Crobarger then filed a motion to compel in the U.S. District Court for the District of Utah, requesting the court to order the U.S. Attorney for Utah to file the Rule 35(b) motion. In its memorandum decision denying the motion, the district court first rejected the government's argument that AUSA Gill's promise did not effect a binding agreement with Crobarger, holding that the promise was supported by adequate consideration and was therefore not simply gratuitous. The court reasoned that "the record is clear that [Crobarger] agreed to continue to assist the government in the future in exchange for the promise which was made by AUSA Gill to file the 35(b) motion" and that "[t]hat promised future

performance was valued and necessary to insure the ultimate successful prosecution of Walsh." Mem. Decision & Order at 13, R. Vol. I.

Despite its recognition of a valid agreement between AUSA Gill and Crobarger, however, the district court held that the agreement was not binding on the U.S. Attorney's Office for the District of Utah and that Utah's U.S. Attorney was therefore not required to file a Rule 35(b) motion on Crobarger's behalf. Distinguishing the agreement at issue here from a plea agreement, the court emphasized "that the United States Attorney in Utah exercised the major and most dominant degree of control over [Crobarger] in the previous prosecutions and ultimate commitment" and that "[t]he District of Utah maintained a continuing concern and interest in the status of [Crobarger's] incarceration." Id. at 20. Because of this continuing interest, the court held that "in the absence of consent by the United States Attorney in Utah the agreement between AUSA Gill and defendant Crobarger would not be binding on the United States Attorney for the District of Utah." Id.

On appeal, Crobarger asks us to reverse the district court's ruling, arguing that, as a general principle, the promise of one government agent is binding on the entire government, and, further, that the policy considerations underlying Rule 35(b) support the notion that a U.S. Attorney's Office in the federal district where an inmate is incarcerated should be able to bind its counterpart in another federal

district where the inmate was originally prosecuted in order to facilitate inmate cooperation in ongoing investigations.

**DISCUSSION**

Crobarger's motion to compel is based on the contention that the United States has breached a cooperation agreement with him. "Whether government conduct has violated [such an] agreement presents a question of law which we review de novo." Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir. 1995). We review a district court's factual findings in relation to "the existence and terms of [the] agreement" for clear error. United States v. Borders, 992 F.2d 563, 566-67 (5th Cir. 1993); see also Allen, 57 F.3d at 1534. On appeal, no party disputes that AUSA Gill and Crobarger entered into an agreement whereby AUSA Gill promised that a Rule 35(b) motion would be filed in the District of Utah on Crobarger's behalf. We therefore confine our discussion to whether the U.S. Attorney's Office in the District of Utah is bound by that agreement.

The Supreme Court has ruled that "when a [defendant's guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). This court later held that a cooperation agreement between a prosecutor and an inmate in

-9-

connection with a methamphetamine investigation unrelated to the inmate's original conviction was "analogous to a plea bargain and therefore that the same analysis applies to both types of agreements." United States v. Pinter, 971 F.2d 554, 557 (10th Cir. 1992) (internal quotation and alteration omitted); see also Thomas v. INS, 35 F.3d 1332, 1337 (9th Cir. 1994) (holding a cooperation agreement in exchange for a U.S. Attorney's promise to inform Parole Commission of cooperation and not to oppose defendant's motions for reduction in sentence or relief from deportation was analogous to a plea agreement); United States v. Johnson, 861 F.2d 510, 512 (8th Cir. 1988) (holding a cooperation agreement in exchange for immunity from prosecution was analogous to a plea agreement); United States v. El-Sadig, 133 F. Supp. 2d 600, 606 (N.D. Ohio 2001) (citing United States v. Streebing, 987 F.2d 368, 372 (6th Cir. 1993), for the holding that a cooperation agreement in exchange for a promise of nonprosecution was analogous to a plea agreement). In Pinter, we stated generally that "promises in cooperation agreements, whether directly or indirectly made, must be fulfilled to their fullest extent in furtherance of fair and proper administration of justice." 971 F.2d at 557 (internal quotation omitted). We thus concluded that the United States Attorney who had entered into the agreement with the inmate breached the agreement by failing to submit a response to a Rule

35 motion filed by the inmate, [5] in accord with the terms of the agreement. Id. at 557-58.

Other circuits have held that "[e]nforcement of [a cooperation] agreement requires that the person making the promise be authorized." Thomas, 35 F.3d at 1337; see also United States v. Flemmi, 225 F.3d 78, 84 (1st Cir. 2000); Pedro v. United States, 79 F.3d 1065, 1068 (11th Cir. 1996); El-Sadig, 133 F. Supp. 2d at 606. The United States argues that AUSA Gill could not have bound the U.S. Attorney in another federal district to his promise because he had no actual authority to do so under 28 U.S.C. § 547, which refers to a United States Attorney's authority "within his district." [6] Crobarger responds that the reference in § 547 is to a U.S. Attorney's authority to prosecute and that this prosecutorial authority implicitly authorizes a U.S. Attorney's Office to enter into cooperation agreements with witnesses in connection with prosecutions even where the agreements involve Rule 35(b) filings in other districts.

It is well established that the United States may be bound by an authorized act of its agent whether the agent's actual authority is express or implied. Flemmi, 225 F.3d at 85. "Authority to bind the Government is generally implied

---

[5]Pinter involved the pre-1987 version of Rule 35. Id. at 556 n.3.

[6]This statute provides that, "[e]xcept as otherwise provided by law, each United States attorney, within his district, shall . . . prosecute for all offenses against the United States." 28 U.S.C. § 547.

when such authority is considered to be an integral part of the duties assigned to a Government employee." Gary v. United States, 67 Fed. Cl. 202, 214 (Fed. Cl. 2005) (quoting H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989) (further quotation omitted)). Thus, the central question before us is whether AUSA Gill's prosecutorial authority necessarily implies the authority to promise, through a cooperation agreement, that a Rule 35(b) motion be filed in another federal district.

Generally, "the express grant of 'authority to "prosecute"'" pursuant to 28 U.S.C. § 547 has been understood to imply "'the power to make plea agreements incidental to prosecution.'" Margalli-Olvera v. INS, 43 F.3d 345, 353 (8th Cir. 1994) (quoting Thomas, 35 F.3d at 1339). Where courts have squarely considered the question of the actual authority of a U.S. Attorney's Office to bind the U.S. Attorney's Office of another district through a plea agreement, they have held that such authority exists where the crimes at issue in the two districts were the same or related and where the plea agreement prevented the second district from proceeding with the prosecution of those crimes. See United States v. Gebbie, 294 F.3d 540, 550 (3d Cir. 2002) ("[W]hen a United States Attorney negotiates and contracts on behalf of 'the United States' or 'the Government' in a plea agreement for specific crimes, that attorney speaks for and binds all of his or her fellow United States Attorneys with respect to those same crimes and those same

-12-

defendants."); United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972) (holding a U.S. Attorney of one district had authority to enter into a plea bargain, in connection with a federal crime with "multistate ramifications," "agreeing that all offenses in the other jurisdictions [arising out of that crime] would be disposed of in the single case").

While both parties point to a circuit split in other circuits' treatment of the issue, our review of the applicable cases indicates that the split is inapplicable to the situation before us. The circuit split involves the question of whether an agreement between an AUSA of one district and an individual should be construed as binding on another district where the agreement itself is ambiguous. The Second Circuit has held that while an AUSA of one district may theoretically bind another district, any ambiguity must be construed in the other district's favor. United States v. Annabi, 771 F.2d 670, 672 (2d Cir. 1985) (holding that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction"). The Third, Fourth, and Ninth Circuits have held that any ambiguity must be construed against the government, and in favor of enforcing the agreement. Gebbie, 294 F.3d at 552 (construing ambiguity in plea agreement "against the Government and hold[ing] that . . . . [the] agreement[] bars the United States Attorney for the Western District of

Pennsylvania from prosecuting [the defendants] for the same crimes and offenses that were at issue in the Ohio plea agreements"); United States v. Johnston, 199 F.3d 1015, 1021 (9th Cir. 1999) (holding that while ambiguities in plea agreement must be construed against the government, where language is clear in binding only a particular district, another district is not bound by agreement); United States v. Harvey, 791 F.2d 294, 303 (4th Cir. 1986) (construing ambiguity in plea agreement against the Government and thus holding agreement was binding on another federal district).

Here, there is no question of ambiguity in the agreement between AUSA Gill and Crobarger. Nevertheless, while the weight of authority appears to favor recognizing the actual authority of a U.S. Attorney's Office in one district to bind its counterpart in another district in certain situations, none of the cases that have recognized such authority have involved a situation similar to the one before us. As indicated above, an AUSA's implicit authority to enter plea agreements derives from the express authority to prosecute. Entering into a plea agreement directly results in the resolution of a case for which that AUSA is responsible. The plea agreements considered in the cases cited above were held to prevent a U.S. Attorney's Office in another district from prosecuting a defendant for crimes identical or related to those to which the defendant pled guilty pursuant to the agreement. Thus, the prosecutorial interests at stake in the two federal districts

-14-

were closely connected and, in a sense, were both resolved by the single plea agreement containing the nonprosecution clause. In another case cited by the parties, a plea agreement made by an AUSA in one district required a U.S. Attorney in another district to recommend a concurrent sentence in connection with a prosecution on different charges. United States v. Van Thournout, 100 F.3d 590, 592 (8th Cir. 1996). The Eighth Circuit's decision holding that agreement enforceable can be understood as recognizing that the U.S. Attorney in the second district had no significant prosecutorial interest in extending the defendant's sentence based solely on his guilty plea in the first district, where the plea agreement made in the first district provided to the contrary. See id. at 594.

The cooperation agreement at issue here, in contrast, implicates the conflicting interests of two U.S. Attorney's Offices in two entirely separate prosecutions. AUSA Gill's interest relates to the prosecution of Walsh for drug distribution in a Colorado prison. On the other hand, the U.S. Attorney's Office for the District of Utah retains an interest in its prior prosecution of Crobarger for entirely unrelated crimes. AUSA Gill's promise that a Rule 35(b) motion be filed on Crobarger's behalf clearly implicates this latter interest while, at the same time, the cooperation agreement's connection to Walsh's prosecution is more attenuated than in the case of a plea agreement. While Crobarger maintains that the interest in his own prosecution is no longer significant because he has already

-15-

pled guilty and been incarcerated, the views expressed by U.S. Attorney Paul Warner when denying Crobarger's request that he reconsider the decision not to file the Rule 35(b) motion indicate the contrary. It is reasonable, moreover, to assume that a U.S. Attorney's Office retains some concern with the continued incarceration of inmates with whose prosecution and sentencing it has been involved. Cf. United States v. Friedland , 83 F.3d 1531, 1540 (3d Cir. 1996) (holding that U.S. Attorney in New York could not bind U.S. Attorney in New Jersey to make a motion to reduce the defendant's sentence where the U.S. Attorney in New Jersey had consistently refused to consider making such a motion). [7]

Where, as here, the prosecutorial interests of two U.S. Attorney's Offices are implicated in connection with completely unrelated cases and potentially conflict, we cannot interpret § 547 as allowing an AUSA in one Office to affirmatively compel the other Office to act against its own interest in order to support the asserted interest of the former. Under the specific facts of this case, we therefore hold that AUSA Gill had no actual authority to bind the U.S.

---

[7]Moreover, we note that, like Friedland, Crobarger has a law degree, has practiced as an attorney, and "has been involved personally in the legal aspects of his case." 83 F.3d at 1539. Moreover, he retained an attorney when he initially began cooperating with AUSA Gill. "Thus, this case does not involve any government overreaching by taking advantage of an unsophisticated defendant." Id.

Attorney's Office for the District of Utah to file a Rule 35(b) motion on Crobarger's behalf. In order for AUSA Gill to make his promise to Crobarger binding, he would have had to consult with and gain the consent of the Utah Office beforehand. Only in that way could the relative importance of the competing interests involved be assessed and resolved. Because AUSA Gill lacked authority to make the promise, Crobarger has no basis for enforcing that promise against the U.S. Attorney's Office for the District of Utah.

The parties cite Doe v. Civiletti, 635 F.2d 88 (2d Cir. 1980), which suggests that "an exception to the actual authority doctrine" exists where the promisee has waived a constitutional right in reliance on a government agent's promise. Id. at 97. However, any such exception would be inapplicable here because Crobarger has not relinquished any constitutional right pursuant to the cooperation agreement. Crobarger contends that he did give up "an important liberty interest" because, "as a result of his cooperation," he was moved to protective custody and remained in twenty-four hour lockdown for almost a year. Appellant's Reply Br. at 10. However, the deprivation of liberty to which Crobarger refers took place before he and AUSA Gill entered into their agreement and thus cannot be treated as consideration for AUSA Gill's promise. Based on our review of the record, we see no basis for concluding that Crobarger waived any rights by way of his agreement in 2003 to provide further cooperation, if

necessary, since by that time he had already voluntarily provided the cooperation that led to the need for his remaining either in a segregated cell or at a different facility when returning to Colorado to testify against Walsh.

## CONCLUSION

For the foregoing reasons, the district court's denial of Crobarger's motion to compel is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge