# United States Court of Appeals
## For the First Circuit

No. 07-1997

UNITED STATES OF AMERICA,

Appellee,

v.

EDWARD B. ELLIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cudahy,* Senior Circuit Judge,
and Lynch, Circuit Judge.

John M. Thompson with whom Thompson & Thompson, P.C. was on brief for appellant.
Karen L. Goodwin, Assistant U.S. Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

May 23, 2008

---

*    Of the Seventh Circuit, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>.  Edward Ellis is serving a twenty-five year sentence on a 1990 conviction for the federal crime of knowingly transporting a minor across state lines to engage in illegal sexual conduct.  18 U.S.C. § 2423.  The facts underlying his conviction and the procedural history of his case are detailed in this court's two prior opinions, <u>Ellis</u> v. <u>United States</u>, 313 F.3d 636 (1st Cir. 2002) (denying collateral review under 28 U.S.C. § 2255), and <u>United States</u> v. <u>Ellis</u>, 935 F.2d 385 (1st Cir. 1991) (affirming on direct appeal of conviction), and in a published district court opinion, <u>Ellis</u> v. <u>United States</u>, 446 F. Supp. 2d 1 (D. Mass. 2006) (considering second petition under § 2255).  In this case, Ellis attempts to shorten his term of imprisonment, purporting to assert a claim under Fed R. Crim. P. 35(b) based on assistance Ellis provided to the warden of the federal prison where he was once incarcerated.  The district court rejected his claim, as do we.  We affirm the dismissal of the case.

I.

In 1994, after his conviction and imprisonment, Ellis provided assistance to the warden of the federal prison in Lompoc, California, where Ellis was an inmate.  The nature of the assistance is not relevant; it suffices to say that the assistance was of value to the warden in running the prison.  In return for his assistance, Ellis asserts, the warden made a two-part promise: to transfer Ellis to a lower-security prison and to write a letter

to the sentencing court to "create an opportunity to have the sentencing judge consider reducing [the defendant's] sentence[] as a reward for [his] service."

The warden did transfer Ellis and did write a letter, in May 1994, to the federal judge in Massachusetts who had sentenced Ellis. The letter fully disclosed the defendant's assistance to the warden, noted that the defendant's "cooperation played a significant role," and that the warden was "very grateful" to the defendant.[1] The sentencing judge received the letter, and the U.S. Attorney at some point became aware of the letter. The U.S. Attorney did not file a Rule 35(b) motion to reduce Ellis's sentence. See Fed. R. Crim. P. 35(b)(2) ("Upon the government's motion made more than one year after sentencing, the court may reduce a sentence [for] the defendant's substantial assistance . . . ."). The sentencing court made no effort sua sponte to modify Ellis's sentence as a result of the letter.

In 2007, some thirteen years after the warden's letter, Ellis filed a motion in his original criminal action in federal district court in Massachusetts asserting that he was entitled to have his sentence reduced. The original sentencing judge who had

_____

[1] Ellis worked with another inmate to provide the assistance to the warden. The warden's letter regarding Ellis was lost and is not in the record. The letter to the other inmate's sentencing judge is in the record and both parties agree it "may be inferred that" the warden's letter to Ellis's sentencing judge "was similar in substance to his letter" to the other inmate's sentencing judge. Def. Br. at 6; see also Gov't Br. at 7 n.6.

-3-

received the warden's letter had died in the interim.  Ellis's affidavit accompanying the motion claimed that the warden intended that his letter to the original sentencing judge would serve as a "catalyst for a sentence reduction."  Since the only way to reduce Ellis's sentence was through a motion under Fed. R. Crim. P. 35(b), Ellis claimed that the warden's alleged promise was, in essence, one that bound the government to file a Rule 35(b) motion on his behalf.

The district court denied Ellis's motion and ordered that Ellis's criminal case be closed.  The court, in a written ruling, held that the evidence was that the warden had fulfilled his promise to the defendant, and that even if the warden had promised to file or ensure the filing of a Rule 35(b) motion (and there was no evidence to suggest he had), the warden lacked the authority to do so.

## II.

We bypass the question of whether there was sufficient evidence that the warden promised Ellis that he would see to the filing of a Rule 35(b) motion.  Even if the warden had made such a promise, he was without authority to do so and the promise may not be enforced.

Ellis's appeal depends entirely on his argument that for purposes of Rule 35(b), the warden of a single federal prison is an agent of the Attorney General and has actual authority acting on

his own to bind the government[2] to file a Rule 35(b) motion. This is a pure issue of law, which we review de novo. United States v. Flemmi, 225 F.3d 78, 84 (1st Cir. 2000). Ellis's contention is wrong.

A.        Statutory Scheme for Sentencing Reduction

Congress created two statutory avenues, both set out in 18 U.S.C. § 3582(c)(1), for reduction of an inmate's sentence on grounds unrelated to his guilt or the appropriateness of the underlying sentence of imprisonment. One avenue authorizes the Director of the Bureau of Prisons to file a motion; the other avenue authorizes the government as a party in a criminal case before the courts to file a motion under Rule 35(b).

The first, § 3582(c)(1)(A), provides that a court, "upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . if it finds that (i) extraordinary and compelling reasons warrant such a reduction." The Bureau of Prisons informed Ellis in a letter from its General Counsel that Ellis was not eligible for relief under this provision, as the Bureau had chosen to limit its use of this avenue to situations where a prisoner has severe medical problems. The defendant has conceded that this was a matter of discretion for the Bureau, and

---

[2]    There is no claim that the warden had discussed the subject with prosecutors or the Attorney General and had obtained their agreement to file such a motion.

agrees that he does not qualify for consideration under § 3582(c)(1)(A).

The other avenue, § 3582(c)(1)(B), allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted . . . by Rule 35 of the Federal Rules of Criminal Procedure."  We set forth the text of Rule 35 in the footnote.[3]

---

[3]    Rule 35, entitled "Correcting or Reducing a Sentence," provides in relevant part:

(a)  Correcting Clear Error. Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.

(b) Reducing a Sentence for Substantial Assistance.
      (1) In General. Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.
      (2) Later Motion. Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:
            (A)  information not known to the defendant until one year or more after sentencing;
            (B)  information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or
            (C) information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

Fed. R. Crim. P. 35.

The recent history of Rule 35 demonstrates that the rule reflects a set of conscious choices by Congress, choices which determine the outcome of this case. Congress and the Rules Committee explicitly made choices both as to the grounds under which a modification of a sentence can be sought and as to who is empowered to make such a motion.

Before 1987, Rule 35(b) allowed a court, on its own initiative or by motion from either party, to reduce a sentence within 120 days of the original sentence, but no modifications to a sentence could be made thereafter. See Fed. R. Crim. P. 35(b) (amended 1987). The previous version of the rule allowed "essentially a plea for leniency . . . addressed to the sound discretion of the district court." United States v. Ames, 743 F.2d 46, 48 (1st Cir. 1984); see also United States v. Angiulo, 57 F.3d 38, 41 n.3 (1st Cir. 1995) ("[F]ormer Rule 35(b) conferred virtually unfettered discretion on sentencing courts."); United States v. Distasio, 820 F.2d 20, 24 (1st Cir. 1987) (former Rule 35(b) "offers the sentencing court an opportunity to temper its original sentence").

Beginning with Congress's passage of the Sentencing Reform Act of 1984, Rule 35 has undergone a series of changes. See Fed. R. Crim. P. 35 cmt. ("Credit(s)"). The discretion of the district court has been severely restricted. A court now can modify a sentence sua sponte only within seven days of the

sentencing, and even then only to correct clear errors. See Fed. R. Crim. P. 35(a). The defendant is no longer allowed to make motions under Rule 35(b); only the government is empowered to do so. Id. 35(b). In contrast to the general "plea for leniency" under the old rule, the government now can request a modification of the defendant's sentence only as a result of the defendant's "substantial assistance." In the context of original sentencing, this is a term of art. See U.S.S.G. § 5K1.1 (providing for downward sentencing departures for "substantial assistance"). In United States v. Alegria, 192 F.3d 179 (1st Cir. 1999), we noted that "with regard to the meaning of 'substantial assistance,' Rule 35(b) and USSG § 5K1.1 are birds of a feather." Id. at 184.

In addition to the grounds for a Rule 35(b) motion having been restricted, the absolute 120-day time limit has been replaced with a graduated scheme of time limits. Within a year of sentencing, a court may reduce the sentence on the government's motion for any sort of substantial assistance, see Fed. R. Crim. P. 35(b)(1), but outside of a year of sentencing, the court may reduce the sentence on the government's motion only if three criteria, which generally amount to a discovery rule, are met, see id. 35(b)(2)(A)-(C).

We need not get into the question of whether Ellis's assistance here was "substantial" because Ellis can prevail on his claim only if he can show that there was a promise by the

"government" as meant by Rule 35(b) to file a Rule 35(b) motion at all. Filing such a motion resides in the government's discretion. Courts have recognized, in both the section 5K1.1 and the Rule 35(b) contexts, that a breach of a promise to file a substantial assistance motion, like other discretionary decisions by a prosecutor, is reviewable. See Wade v. United States, 504 U.S. 181, 185 (1992); United States v. Marks, 244 F.3d 971, 975 (8th Cir. 2001) (applying Wade to Rule 35(b)).

Ellis makes no claim that a prosecutor ever made a promise to him, and so the case law described above is of no help to him. Thus, Ellis needs to show that the discretionary power given to the "government" in Rule 35(b) includes an individual warden of a prison within the Bureau of Prisons where the defendant has been confined. We conclude the term "government" in Rule 35(b) does not mean a warden.

The Federal Rules "govern the procedure in all criminal proceedings" in the federal courts, Fed. R. Crim. P. 1(a)(1), proceedings in which the "government" is to be represented by its prosecuting arm. While "government" itself is not defined in the Rules, an "[a]ttorney for the government" is defined as "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; . . . and (D) any other attorney authorized by law to conduct proceedings under these rules

as a prosecutor." Id. 1(b)(1). The government does not proceed pro se, but through an attorney for the government.

When Congress wanted to define the power of the Bureau of Prisons with respect to sentencing reduction, it did so in the "extraordinary and compelling reasons" provision of § 3582(c)(1)(A), the statute's other avenue for sentencing reduction. Even then, it confined that power to the Director of the Bureau of Prisons. Thus it is clear in light of § 3582(c)(1)(A) that a warden within the Bureau of Prisons is not authorized to make a motion as the "government" under Rule 35(b).

B.       Actual Authority by Necessary Implication

Since the warden may not file a Rule 35(b) motion, Ellis argues that the warden nonetheless has authority to bind the U.S. Attorney or the Attorney General to make a Rule 35(b) motion. Even if the terms of Rule 35 did not preclude such an argument (and we think they do), the argument would fail.

When a private party seeks performance of a promise allegedly made by the government, it must show that the government representative alleged to have entered into the agreement had actual authority to bind the United States. Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed Cir. 1997). This is because the government can be bound only by those with authorization to do so. The Supreme Court has explained:

> [A]nyone entering into an arrangement with the
> Government takes the risk of having accurately

-10-

> ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1260 (Fed. Cir. 2005). As a result, Ellis's argument raises issues only of "actual" authority, as "doctrines such as estoppel and apparent authority are not available to bind the federal sovereign." Flemmi, 225 F.3d at 85; see also H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989). Courts have applied these principles of authority from the government contracting context to claims of agreements between the government and criminal defendants.[4]

---

[4] These principles have been applied both to promises to assist a criminal defendant in his underlying criminal proceeding, see, e.g., Flemmi, 225 F.3d at 85; United States v. Fuzer, 18 F.3d 517, 520-21 (7th Cir. 1994), and to promises to assist the defendant in other proceedings involving the government, see, e.g., United States v. Crobarger, 158 F. App'x 100, 105 (10th Cir. 2005) (alleged promise made by a prosecutor in one district to file a Rule 35(b) motion in a proceeding in another district); United States v. Igbonwa, 120 F.3d 437, 443 (3d Cir. 1997) (alleged promise by a prosecutor to bind the Immigration and Naturalization Service to withhold deportation).

Courts have also used contract principles more generally to analyze claims, as here, in which the alleged promise was made as a reward for assistance unrelated to the defendant's original conviction. See United States v. McDowell, 149 F. App'x 508, 512 (7th Cir. 2005); United States v. Pinter, 971 F.2d 554, 557 (10th Cir. 1992).

"Actual authority may be conferred either expressly or by necessary implication." Flemmi, 225 F.3d at 85; see also H. Landau & Co., 886 F.2d at 324. It is clear that the warden does not have express authority, nor does he have actual authority by necessary implication.

In Flemmi, where the defendant claimed a breach of a cooperation agreement, this court assumed arguendo, in the defendant's favor, that civil agency principles of implicit actual authority applied to the federal government in the context of a criminal proceeding. Flemmi, 225 F.3d at 85. We do the same here. In the civil context, an agent's designated authority "to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." Restatement (Second) of Agency § 35; accord ICC v. Holmes Transp., Inc., 983 F.2d 1122, 1129 n.10 (1st Cir. 1993).

Congress has delegated to the Bureau of Prisons, under the direction of the Attorney General, "the management and regulation" of all correctional institutions, 18 U.S.C. § 4042(a)(1), including the "protection . . . of all persons charged with or convicted of offenses against the United States," id. § 4042(a)(3). The defendant's argument that the warden has actual authority by necessary implication to promise to file a Rule 35(b) motion is premised on three regulations promulgated pursuant to this statutory authority: one authorizing the Director of the

Bureau of Prisons to ensure the proper functioning of the prison, including safety, 28 C.F.R. § 0.95; one designating the warden as the "chief executive officer" of the prison (and thus establishing the warden as the designated agent of the Director of the Bureau of Prisons), id. § 500.1; and one authorizing the staff of the prison to seize contraband, id. § 553.13. The defendant's argument is wrong both as to the test to be applied for actual authority by necessary implication and as to the result of applying the test.

"The test is not whether such a power might from time to time prove advantageous, but, rather, whether such a power usually accompanies, is integral to, or is reasonably necessary for the due performance of the task." Flemmi, 225 F.3d at 86; see also Thomas v. INS, 35 F.3d 1332, 1350 (9th Cir. 1994) ("Authority [to bind the government] 'is generally implied when such authority is considered to be an integral part of the duties assigned to a government employee.'" (quoting H. Landau & Co., 886 F.2d at 324)); United States v. Crobarger, 158 F. App'x 100, 105 (10th Cir. 2005).

Further, it is an objective test. See Fed. Crop Ins. Corp., 332 U.S. at 384 ("[T]he agent himself may have been unaware of the limitations upon his authority."). While a warden may be responsible for prison safety, that responsibility does not by necessary implication carry with it the power to reward helpful inmates with sentence reductions by the filing of a motion under Rule 35(b). A warden has many other carrots to induce cooperation

-13-

from inmates and to reward cooperative inmates, including notifying the U.S. Attorney for consideration of a Rule 35(b) motion based on the inmate's cooperation; recommending transfer of the inmate to another facility, as the warden did here; perhaps improving individual confinement conditions; and granting a lump sum award of "extra good time" credit to an inmate for an "act which protects the lives of staff or inmates," 28 C.F.R. § 523.16(c).

Set against the defendant's desired inferences from the general authority given to wardens is the authorization given to the U.S. Attorney in Rule 35(b) to file such motions. There is no doubt that the authorization to the U.S. Attorney trumps any argument of actual authority by necessary implication. See Flemmi, 225 F.3d at 85 (noting that some courts have recognized that "when the authority to do a particular task can be characterized as incidental to the duties assigned to two government agencies, . . . a specific source of authority to do a particular task trumps a more general source of authority"); see also United States v. Igbonwa, 120 F.3d 437, 443-44 (3d Cir. 1997); San Pedro v. United States, 79 F.3d 1065, 1070-71 (11th Cir. 1996).

We have considered Ellis's other arguments and they are without merit.[5]

<hr>

[5] Based on our resolution of the claim, we need not address the government's argument that the claim should be treated as a successive petition for collateral review under 28 U.S.C. § 2255.

<u>Affirmed</u>.